MARY JONES v. HOME SECURITY LIFE INSURANCE COMPANY.

(Filed 12 April, 1961.)

**1. Trial § 26—**

Where defendant pleads an affirmative defense, the court may not, ordinarily, rule on motion to nonsuit until all of the evidence has been introduced, but where defendant admits plaintiff's *prima facie* case, and plaintiff admits the facts constituting defendant's defense but pleads that defendant is estopped to assert the defense, the burden is upon plaintiff to allege and prove the facts relied upon as an estoppel, and upon his failure to carry such burden, nonsuit is proper.

**2. Insurance § 26—**

Where insurer admits plaintiff's *prima facie* case in an action on the life policy but alleges that the policy was issued upon false and material answers in the application and seeks cancellation of the policy, plaintiff's reply setting up estoppel of the insurer to assert the defense must allege facts constituting such estoppel, and when plaintiff's allegations or evidence is insufficient to defeat the cross action for cancellation, nonsuit of the action may be entered.

**3. Insurance § 17—**

Questions in an application for life insurance relating to the physical condition of applicant and her life expectancy are material to the risk, and warrant avoidance or cancellation of the policy when they are false, G.S. 58-20, even though the policy is written without a medical examination. G.S. 58-200, requiring proof of fraud to entitle insurer to cancel such policy was repealed by the Act of 1945.

.

**4. Same—**

Where an application for life insurance signed by insured stated that applicant had read the questions therein contained carefully and that the answers thereto were complete and true, the law will presume, in the absence of fraud or mistake, that the applicant had knowledge of any misrepresentations in the answers even though the answers were written by insurer's agent, and insurer may not be held to have waived such misrepresentations in the absence of evidence that insurer or its agent had actual or constructive knowledge that the answers appearing in the application were false in fact.

**5. Waiver § 2—**

Waiver is the intentional relinquishment of a known right, and a party may not be held to have waived a matter of which he had no knowledge.

**6. Insurance § 17—**

Even though the evidence be sufficient to show an insurer's agent wrote the answers in insured's application for a life policy with total indifference to their truth or falsity, insurer will not be estopped to rely upon their falsity as ground for forfeiture or cancellation unless insurer had actual or constructive knowledge of the falsity of the answers entered on the application by the agent. G.S. 58-197.

APPEAL by plaintiff from *Parker, J.,* September 12, 1960 Term of LENOIR.

On 1 December 1957 defendant issued its policy of life insurance in the sum of $1000 to Bessie Mae Tucker. She died 17 December 1957. Plaintiff, named as beneficiary in the policy, brings this suit to recover in accordance with its terms and provisions. Her complaint alleges the issuance of the policy, death of the insured, proof of death, and demand for and defendant's refusal to pay.

Defendant admitted issuing the policy, death of the insured, and its refusal to pay. It based its denial of liability on asserted material misstatements with respect to the health of insured appearing in the application, copy of which was attached to and made part of the policy. It not only denied liability but asserted a cross action and prayed for cancellation of the policy because of the alleged misstatements. It paid into court the sum of $1.59, the amount which the insured had paid as the first premium for the policy. It alleged insured died from bronchial pneumonia which had as its antecedent cause bronchial asthma, that the insured had for many years prior to the issuance of the policy suffered from bronchial asthma which was severe and chronic, that she had frequently been treated by qualified physicians for this asthmatic condition and upon several occasions, especially during 1957, insured had been hospitalized because of severe attacks of bronchial asthma, that both plaintiff and

the insured were aware of the serious health problem created by insured's asthmatic condition. Notwithstanding this knowledge, insured stated on the application that she had not been ill at any time during the past five years and did not have any form of malignant disease, did not have and had never had any disease or impairment of the heart or kidneys, high blood pressure, asthma, or other diseases specifically enumerated in the questions. On the questions directed to a description of any such illnesses or diseases she answered "none." To the question "Are you now free from disease or symptoms of disease and in good health?" she answered "yes." It averred that it relied upon the answers given in the application in issuing the policy and would not have issued the policy if it had known the true facts.

Plaintiff filed a reply to the further answer. She admitted that her daughter, the insured, "had suffered from asthma for sometime prior to November 26, 1957, and had been treated by a physician for said disease." She alleged defendant was estopped to deny the validity of the policy upon the ground of misrepresentation of the physical condition of the insured "by reason of its failure through its duly authorized agent and employee, to inquire of the plaintiff or the said insured at the time of the execution of the application for the issuance of the said policy, what the physical condition of the said insured was, and whether or not she had had medical treatment or been a patient in the hospital for treatment of any disease, including asthma."

Plaintiff offered the policy and pleadings to establish the issuance of the policy, death, demand and refusal to pay, and rested. Defendant moved for nonsuit. The motion was overruled. Defendant called attention to the application attached to the policy consisting of two parts. Part I relates to the kind of insurance, name of the insured, and other matters not here material except for the statement above the insured's signature reading: "The Applicant hereby declares that the above statements and answers to questions are true and complete and agrees that Part II of this application, containing answers to questions and statements by any one or more of the Applicant, Life to be Insured and any Purchaser, shall form part of this application, and that all the said answers and statements, whether herein or in the said Part II, shall form the basis of the contract, and that if any material misrepresentation or evasion is contained in the entire application the policy shall be void." Part II of the application relating to matters personal to the life to be insured is directed to disease, her present and prior health. Answers are given to each of the several questions asked. Following the answers is: "I DECLARE THAT I HAVE READ THE ABOVE QUESTIONS CAREFULLY and that the answers to the said questions are full, complete and true

and are in continuation of and form part of an application for insurance to The Home Security Life Insurance Company." Then follows the signature of the insured. Defendant offered evidence from physicians with respect to the hospitalization and treatment of the insured for asthma tracing back to 1955. It offered testimony of an official of the company who authorized the issuance and delivery of the policy that the policy would not have been issued if the application had shown that the insured suffered from asthma. It offered evidence tending to relate the death to the insured's asthmatic condition. It thereupon rested and renewed its motion to nonsuit. Plaintiff objected to the court's ruling on the motion until she had opportunity to introduce additional evidence in support of the allegations in her reply. The court overruled plaintiff's objection and allowed defendant's motion for nonsuit.

The court allowed plaintiff to put in the record an affidavit of the plaintiff showing the substance of testimony which she would give in support of the allegations in the reply but made no ruling upon the competency, relevancy, or materiality of the evidence so tendered. It permitted the same to become part of the statement of the case on appeal. From the judgment allowing defendant's motion to nonsuit plaintiff appealed.

*Jones, Reed & Griffin for plaintiff appellant.*
*Wallace & Wallace for defendant appellee.*

RODMAN, J. The first question to be disposed of is the right of plaintiff to offer evidence in support of allegations appearing in the reply to defeat defendant's crossaction for cancellation and its defense of misrepresentation. When a defendant asserts an affirmative defense, he in effect becomes the plaintiff and carries the burden of proof of his affirmative defense. When the party carrying the burden of proof rests, his adversary is entitled to offer evidence to defeat the claim or defense asserted. Ordinarily, therefore, a court cannot rule on the right to recover until it has heard all of the evidence; but when, as here, the plaintiff admits the facts pleaded and merely seeks to avoid the force of the admitted facts, plaintiff must both allege and prove the facts on which she relies. The facts alleged in the reply were not sufficient to defeat defendant's rights to cancellation or to impose liability on defendant.

In disposing of the case we treat the statements set out in the affidavit as evidence before the court when it allowed defendant's motion for nonsuit. She says that she and the insured, shortly before 1 December 1957, went to Mr. Davis, the agent of the defendant

for the purpose of increasing the amount payable on policies thereto-
fore issued by defendant on the lives of her three children. She was
informed that could not be done, but she could continue in force the
existing policies and take new insurance for such additional amount
as she desired. She elected to pursue that course. The agent inquired
if the father of the insured was living. She replied in the negative.
"He then asked me if Willis (a brother) had ever had TB, I said no.
He asked me if he had been in the hospital and I told him no, that
neither of my boys had been in the hospital. He did not ask Bessie
Mae Tucker, my daughter, any questions at all, except to sign the
application. . . . He did not ask me or either of my children any ques-
tions about any diseases."

The first application for insurance on which the policy in suit
issued was dated 11 November 1957. That application showed that
insured had two brothers living but did not show whether she had
any brother who was dead. It showed one sister dead. When that
application was received at defendant's home office, it was returned
to ascertain if insured had any brothers who were dead. New appli-
cations were signed by insured on 26 November. They were identical
with the applications of 11 November except for the additional in-
formation requested by defendant. Plaintiff, in her affidavit, speaking
with reference to the last application, said the agent called her and
insured to his office and told them that he had made a mistake in
the application. He asked insured to sign another one. "He did not
ask any questions at that time about any disease or about anything
else. When the policies came, I put them away and did not read either
of them and did not know what had been written in the applications
until after the death of my daughter . . . I knew she had had asthma
for sometime before her death, and I would have told Mr. Ronald
Daniels that she had asthma and had been treated by doctors and
had had hospital treatment if he had asked me."

Plaintiff neither alleges nor testifies that the agent for the insurance
company in fact knew that the insured suffered from chronic asthma.
There is no allegation or evidence suggesting illiteracy on the part of
the insured or her inability to fully comprehend each of the questions
appearing on Part II of the application. Her signature is neat and
legible. There is neither allegation nor evidence suggesting that the
insured was prevented from reading the questions or answers by any
trick or device. The allegation stops with the assertion that the
answers were not in fact written by the insured nor were the ques-
tions propounded to her.

Plaintiff points to two statutes: G.S. 58-30, which provides that
statements in applications for life insurance are representations

which, unless material or fraudulent, will not defeat recovery on a policy based thereon, and G.S. 58-197, which makes a person who solicits an application for life insurance the agent of the company and not the insured, to support her contentions that the court committed error in allowing defendant's motion to nonsuit.

Manifestly the questions and answers relating to the physical condition of applicant and her life expectancy because of her chronic asthmatic condition were material to the risk the insured was asked to assume. *Swartzberg v. Insurance Co.,* 252 N.C. 150, 113 S.E. 2d 270; *Tolbert v. Insurance Co.,* 236 N.C. 416, 72 S.E. 2d 915; *Wells v. Insurance Co.,* 211 N.C. 427, 190 S.E. 744; *Schas v. Insurance Co.,* 166 N.C. 55, 81 S.E. 1014.

That the answers were false is conceded.

Since 1945 when the Act of 1899 (codified as C.S. 6460, later as G.S. 58-200) requiring insurers to establish fraud to defeat policies issued without medical examination because of false statements in the applications was repealed, it is not necessary to establish fraud. It is sufficient to defeat recovery on policies issued on representations which are false and material. *Wells v. Insurance Co., supra; Tolbert v. Insurance Co., supra.*

Plaintiff, to avoid the effect of the false and material representations, alleged the company issued the policy with knowledge that the answers were false and thereby waived the right which it otherwise would have to defeat her claim.

There is no evidence whatever that the company or its agent knew the answers appearing in the application were in fact false. The evidence is sufficient to permit a jury to find that defendant's agent wrote the answers with total indifference to their truth or falsity. If the acts of the agent as described by plaintiff suffice to establish waiver or to estop defendant from denying liability, the judgment should be reversed. Otherwise it should be affirmed.

"Waiver is the intentional relinquishment of a known right. It is usually a question of intent; hence knowledge of the right and intent to waive it must be made plainly to appear . . . There can be no waiver unless so intended by one party and so understood by the other, or unless one party has so acted as to mislead the other. 2 Hermon on Estoppel, Sec. 825." *Green v. P.O.S. of A.,* 242 N.C. 78, 87 S.E. 2d 14. The evidence is insufficient to support plaintiff's claim of waiver. Does it suffice to support the assertion that defendant, by the conduct of its agent, has estopped itself to deny liability on the policy? The answer is no.

In *Cuthbertson v. Insurance Co.,* 96 N.C. 480: "The plaintiff pro-

posed to prove, that the questions referred to were in fact not asked, and that he signed the application without knowing that it contained them. This was objected to, and the objection sustained, and this is excepted to. It is conceded that the plaintiff could read and write, and that he signed the application with his full name." On these facts *Davis, J.,* said: "There was no error in excluding the proposed evidence. In the absence of fraud or mistake, a party will not be heard to say that he was ignorant of the contents of a contract signed by him."

In *Weddington v. Insurance Co.,* 141 N.C. 234, *Walker, J.,* said: "It made no difference whether the plaintiff knew what was in the non-waiver agreement or not. He signed it, and the law presumes he did know what was in it, and he will not be heard, in the absence of any proof of fraud or mistake, to say that he did not." The law declared in those cases has been applied in *Inman v. WOW,* 211 N.C. 179, 189 S.E. 496; *Assurance Society v. Ashby,* 215 N.C. 280, 1 S.E. 2d 830; *Thomas-Yelverton Co. v. State Capital Life Ins. Co.,* 238 N.C. 278, 77 S.E. 2d 692. See also *Metropolitan Life Ins. Co. v. Alterovitz,* 14 N.E. 2d 570, 117 A.L.R. 770, with annotations to that case, p. 796; Annotations 81 A.L.R. 865, 148 A.L.R. 514; 44 C.J.S. 1107-1108. We give our approval to the statement appearing in 29 A Am. Jur. 236 that "the rule that the insured is not responsible for false answers in the application where they have been inserted by the agent through mistake, negligence, or fraud is not absolute, and applies only if the insured is justifiably ignorant of the untrue answers, has no actual or implied knowledge thereof, and has been guilty of no bad faith or fraud."

Insurer's lack of knowledge, actual or constructive, of the falsity of statements appearing in the application, distinguishes cases typified by *Chavis v. Insurance Co.,* 251 N.C. 849, 112 S.E. 2d 574; *Cato v. Hospital Care Assoc.,* 220 N.C. 479, 17 S.E. 2d 671; and *Heilig v. Insurance Co.,* 222 N.C. 231, 22 S.E. 2d 429, from this case.

Affirmed.