HAZEL M. WARD v. DURHAM LIFE INSURANCE COMPANY

No. 309A88

(Filed 26 July 1989)

1. **Insurance § 18; Rules of Civil Procedure § 56.3— summary judgment hearing—plaintiff's affidavit—striking of legal conclusions—other statements not hearsay**

The trial court properly struck portions of plaintiff's affidavit stating that defendant insurer had notice of insured's medical treatment for high blood pressure and his conviction for driving under the influence of alcohol and the reason that insured signed the application since those portions are conclusions rather than statements of fact. However, the trial court erred in striking as hearsay portions of the affidavit relating statements made by plaintiff and the insured to defendant's agent since they were offered to prove that defendant's agent had notice of the matters contained in the statements and not to prove the truth of those matters.

**Am Jur 2d, Summary Judgment §§ 18, 35.**

2. **Insurance § 18.1— life insurance application—high blood pressure treatment—misrepresentation material**

   A misrepresentation in an application for a life insurance policy that the applicant had never been treated for high blood pressure was material as a matter of law.

   **Am Jur 2d, Insurance § 1055.**

3. **Insurance § 19— life insurance application—material misrepresentation—knowledge of facts by insurer**

   Even material misrepresentations in applications for insurance do not void the policy if the insurer knew the facts surrounding the misrepresentations at the time it accepted the application and issued its policy based thereon.

   **Am Jur 2d, Insurance § 1581.**

4. **Insurance § 19.1— life insurance application—agent's knowledge of misrepresentations—apparent authority**

   An insurance agent had apparent authority to act for the insurer in receiving insurance applications and assisting applicants in properly completing them, and she acted within the scope of this apparent authority if she accepted an application with knowledge of misrepresentations therein.

   **Am Jur 2d, Insurance § 1592.**

5. **Insurance § 19.1— life insurance application—agent's knowledge of material misrepresentations—imputation to insurer**

   An insurer's authorized agent's knowledge of false material answers on a life insurance application is imputed to the insurer unless both the agent and the applicant intend to perpetrate a fraud on the insurer by submitting the false answers.

   **Am Jur 2d, Insurance §§ 1582-1587.**

6. **Insurance § 19.1— life insurance application—applicant's signing of application—material misrepresentations—knowledge by agent—imputation to insurer**

   The mere signing of a life insurance application with false material answers by an applicant who can read and write is not enough to avoid imputation of the agent's knowledge of the false answers to the insurer. Whether the knowledge is imputed depends ultimately on whether the applicant participated with the agent in committing a fraud on the insurer.

   **Am Jur 2d, Insurance §§ 1582-1587.**

WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

7. **Insurance § 19.1— life insurance application—misrepresentations—insured's collusion with agent**

Where an insured understandingly executes an application he knows contains false material answers or executes it under circumstances that would put a reasonable person on notice that the application contains such answers, he ipso facto colludes with the agent in misleading the company.

**Am Jur 2d, Insurance § 1620.**

8. **Insurance § 19.1— life insurance application—false material answers—agent's knowledge imputable to insurer—material issue of fact**

Plaintiff's forecast of evidence presented a material issue of fact as to whether knowledge by defendant insurer's agent of false material misrepresentations in an application for life insurance should be imputed to defendant insurer where it tended to show that negative answers to questions as to whether insured had ever been arrested for the use of alcohol and treated for high blood pressure were false; insured signed the application only after defendant's agent assured him that, since the events in question occurred more than two years earlier, they would not affect his insurability; and insured could have reasonably believed that the questions were truthfully answered in the negative because none of the events to which they referred occurred within this two-year period.

**Am Jur 2d, Summary Judgment § 27.**

ON defendant's appeal pursuant to N.C.G.S. § 7A-30(2) of a decision of a divided panel of the Court of Appeals, 90 N.C. App. 286, 368 S.E. 2d 391, *disc. rev. granted*, 322 N.C. 838, 371 S.E. 2d 284 (1988), reversing summary judgment in favor of defendant entered by *Llewellyn, J.*, at the 29 April 1987 session of Superior Court, BEAUFORT County, and upon defendant's petition for discretionary review as to additional issues pursuant to N.C.G.S. § 7A-31. Heard in the Supreme Court 16 November 1988.

*Stephen A. Graves for plaintiff appellant.*

*Young, Moore, Henderson & Alvis, P.A., by Robert C. Paschal and Theodore S. Danchi, for defendant appellant.*

## WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

EXUM, Chief Justice.

This is an action to recover proceeds allegedly due under a life insurance policy issued by defendant on the life of plaintiff's deceased husband. Refusing to pay the proceeds, defendant relies on what it contends are material misrepresentations made in the application for the policy. The question is whether on the factual showing made at the hearing defendant is entitled to summary judgment on the material misrepresentation defense. The Court of Appeals concluded it was not. *Ward v. Durham Life Ins. Co.*, 90 N.C. App. 286, 292, 368 S.E. 2d 391, 395, *disc. rev. granted*, 322 N.C. 838, 371 S.E. 2d 284 (1988). We affirm.

I.

In support of its motion for summary judgment defendant offered three affidavits, one from each of three vice-presidents. These affidavits tended to show the following:

On 5 October 1985 plaintiff and her husband, Vernon J. Ward, agreed to apply for a life insurance policy through defendant's agent and Mr. Ward's first cousin, Brenda W. Ward. After advising the Wards that she was an agent for defendant, Brenda asked the Wards to answer questions from an insurance application form. After the Wards answered the questions orally, Brenda recorded their answers on the application form. After all questions had been asked and answered and recorded by Brenda on the form, Mr. Ward signed the application and paid the requested premium.

Apparently "Question 30.k" on the form asked whether the applicant had ever been "arrested for the use of alcohol," and "Question 32.d" asked whether applicant had ever been treated for high blood pressure. The form as signed by Mr. Ward showed negative answers to these questions.[1]

On 15 October 1985 defendant issued its policy insuring the life of Mr. Ward in the amount of $10,000 with an additional accidental death benefit of $10,000. The policy designated plaintiff as beneficiary.

---

1. Although the actual application form is referred to as Exhibit F in defendant's affidavits, neither this nor other exhibits referred to in these affidavits were brought forward on appeal. Thus, we cannot tell precisely what the questions on the form were. There is some discrepancy in the references to the questions on the form made by the plaintiff's affidavit on one hand and defendant's affidavits on the other; but we do not think the discrepancies are material to the issues in the case. The characterization of questions in the text comes from defendant's affidavits.

**WARD v. DURHAM LIFE INSURANCE CO.**

[325 N.C. 202 (1989)]

On 26 January 1986 Mr. Ward was killed in a single car accident on the Pamlico Beach Road in Beaufort County. Thereafter Mrs. Ward submitted to defendant a timely notice of Mr. Ward's accidental death and claimed the benefits allegedly due her under the policy.

Because Mr. Ward's death occurred within the two-year contestable period provided for in the policy, defendant investigated Mr. Ward's medical history. Mr. Ward's medical records showed that on 29 September 1983 Mr. Ward was diagnosed by a local physician as having high blood pressure for which the physician prescribed medication. Because his death resulted from an automobile accident, defendant obtained a copy of the investigative report of the accident from the Division of Motor Vehicles. The accident report indicated that at the time of the accident Mr. Ward was traveling at an excessive speed and had been using alcohol. Prompted by this information defendant checked local court records, which showed that Mr. Ward had pled guilty to "driving under the influence on October 5, 1982."

Claiming that Mr. Ward had not provided truthful answers on his insurance application form with regard to his high blood pressure and his arrest relating to alcohol use and that had truthful answers been given defendant would not have issued its policy, defendant on 5 June 1986 denied Mrs. Ward's claim for benefits and offered a full refund of premiums paid. This action followed.

Mrs. Ward offered in opposition to defendant's motion for summary judgment her own affidavit. In it she swore essentially as follows: When in October 1985 defendant's agent, Brenda Ward, reached question 30(d) on the application form, she asked Mr. Ward if he had ever been convicted of driving under the influence.[2] Mr. and Mrs. Ward informed Brenda that he had been so convicted in October 1982. Brenda responded that since the conviction was more than two years old it would not prevent him from obtaining insurance with her company. As to question 32(d), Brenda asked Mr. Ward if he had ever been treated for high blood pressure. Mr. Ward informed Brenda that: He had been treated for high blood pressure in 1983; medication was prescribed and taken according to the prescription; the prescription was not refilled; and Mr. Ward, who had reduced his intake of salty and fatty foods, had had no symptoms of high blood pressure since that time. Brenda responded that since the treatment had occurred more than two

---

2. This and the following characterizations in the text come, as indicated, from plaintiff's affidavit. See n.1, *supra*.

WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

years ago it "was all right" and would not prevent Mr. Ward from obtaining insurance with her company.

Mrs. Ward swore in her affidavit that "my husband and I truthfully and completely answered the questions on the application taken by Ms. Brenda Ward, the agent for Durham Life Insurance Company. . . . That Brenda Ward said that these things were no problem and would not prevent us from obtaining insurance and she marked the application accordingly." After Brenda completed marking the application, Mr. Ward signed it and paid the initial premium.

Defendant moved to strike the following four quoted portions of plaintiff's affidavit as inadmissible evidence:

[1] That as to question 30(d) and (k), my husband and I advised Ms. Ward that he had in fact been convicted of driving under the influence in the District Court of Beaufort County in October of 1982 and that he had obtained a limited driving privilege.

[2] My husband advised her that he had been treated by Dr. Boyette for high blood pressure in 1983. Then she asked whether or not this had occurred within two years. My husband and I then conferred and advised her that it had been more than two years since he had been treated by Dr. Boyette and he had not had any problems since that time.

[3] That as a result of the responses that were given by my husband and I to Ms. Brenda Ward, Durham Life Insurance Company had notice of my husband's medical treatment for high blood pressure and his conviction for driving under the influence of alcohol in 1982.

[4] My husband signed the application based on this representation.

The trial court allowed the motion and granted summary judgment in favor of defendant.

A majority of the Court of Appeals concluded that the trial court erred in striking portions [1] and [2] from plaintiff's affidavit but that it properly struck portions [3] and [4]. *Id.* at 289, 368 S.E. 2d at 393. The majority then held "that the pleadings and affidavits present a material issue of fact on whether the knowledge of the misrepresentation [in the application] should be imputed to the insurer." *Id.* at 292, 368 S.E. 2d at 395. The majority reversed

WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

the order of summary judgment and remanded for further proceedings. *Id.* The dissenting opinion disagreed, concluding in part that there was no forecast of evidence at the summary judgment hearing sufficient to show under any legal theory that the agent's knowledge of misrepresentations on the application should be imputed to defendant. *Id.* at 292-94, 368 S.E. 2d at 395-96 (Parker, J., dissenting). Defendant appealed on the basis of the dissenting opinion in the Court of Appeals, and we allowed defendant's petition for discretionary review of the additional issue regarding the motion to strike portions of plaintiff's affidavit.

## II.

[1]  As to the trial court's order striking portions of plaintiff's affidavit, we hold the Court of Appeals correctly affirmed as to those portions of the affidavit designated above as [3] and [4] inasmuch as those portions are conclusions rather than statements of fact. *See* 1 Brandis on North Carolina Evidence § 130 (3d ed. 1988); *see also Singleton v. Stewart*, 280 N.C. 460, 467, 186 S.E. 2d 400, 405 (1972) (holding an affidavit statement referring to the notice required for a binding contract was inadmissible as a legal conclusion). We also hold the Court of Appeals correctly reversed the order as to those portions designated [1] and [2].

Those portions of plaintiff's affidavit designated [1] and [2] are not hearsay as the trial court apparently thought and defendant argues. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c); *accord State v. Sidden*, 315 N.C. 539, 551, 340 S.E. 2d 340, 348 (1986). Hearsay is not admissible except as provided by statute or by the rules of evidence. N.C.R. Evid. 802; *accord* 1 Brandis on North Carolina Evidence § 138 (3d ed. 1988); *see also State v. Adcock*, 310 N.C. 1, 37, 310 S.E. 2d 587, 608 (1983) (affidavit offered by defendant was found "clearly hearsay and inadmissible"). If a statement is offered for any purpose other than that of proving the truth of the matter stated, however, it is not objectionable as hearsay and therefore may be admissible. *State v. Irick*, 291 N.C. 480, 498, 231 S.E. 2d 833, 844-45 (1977) (quoting 1 Stansbury's N.C. Evidence, § 141 (Brandis Rev. 1973) at 467-71); 1 Brandis on North Carolina Evidence § 141 (1988); *see* N.C.R. Evid. 801(c). As one example, "[t]he declarations of one person are frequently admitted to prove a particular state of mind of another person who

heard or read them—*e.g.*, to charge him with knowledge or notice of the facts declared." 1 Brandis on North Carolina Evidence § 141 (3d ed. 1988); *accord State v. Foster*, 293 N.C. 674, 683, 239 S.E. 2d 449, 455 (1977). Such statements are admissible since they are offered to show knowledge or notice rather than to prove the truth of the matter stated. 1 Brandis on North Carolina Evidence § 141 (3d ed. 1988).

The statements made to defendant's agent by Mr. and Mrs. Ward, as related by Mrs. Ward's affidavit, were not, as the Court of Appeals correctly concluded, offered to prove the truth of the matters contained in the statements. They were offered to prove simply that defendant's agent had notice of these matters. They were properly admissible and should not have been stricken by the trial court.

### III.

The more difficult question is whether Mrs. Ward's affidavit is a sufficient forecast of evidence to show that at trial she will be able to surmount defendant's affirmative defense of material misrepresentations in Mr. Ward's application for insurance.

Familiar, pertinent principles applicable to the ruling on summary judgment are:

The movant must clearly demonstrate the lack of any triable issue of fact . . . . "[A]ll inferences of fact from the proofs proffered . . . must be drawn against the movant and in favor of the party opposing the motion."

In ruling on summary judgment, a court does not resolve questions of fact but determines whether there is a genuine issue of material fact. . . . Thus a defending party is entitled to summary judgment if he can show that claimant cannot prove the existence of an essential element of his claim *or cannot surmount an affirmative defense which would bar the claim*.

Summary judgment is . . . a device by which a defending party may force the claimant to produce a forecast of claimant's evidence demonstrating that claimant will, at trial, be able to make out at least a *prima facie* case *or that he will be able to surmount an affirmative defense*. Under such circum-

ances claimant need not present all the evidence available in his favor but only that necessary to rebut the defendant's showing that an essential element of his claim is non-existent *or that he cannot surmount an affirmative defense.*

*Dickens v. Puryear,* 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981) (citations omitted) (emphases supplied).

There is little question that, standing alone, the misrepresentations in the application would be enough to void the policy. "A policy of life insurance may be avoided by showing that the insured made representations which were material and false." 7 Strong's N.C. Index 3d *Insurance* § 18 (1977); *accord Rhinehardt v. Insurance Co.,* 254 N.C. 671, 673, 119 S.E. 2d 614, 616 (1961) (per curiam); *Thomas-Yelverton Co. v. Insurance Co.,* 238 N.C. 278, 282, 77 S.E. 2d 692, 695 (1953); *Tolbert v. Insurance Co.,* 236 N.C. 416, 418, 72 S.E. 2d 915, 917 (1952); *Assurance Society v. Ashby,* 215 N.C. 280, 283, 1 S.E. 2d 830, 833 (1939); *Inman v. Woodmen of the World,* 211 N.C. 179, 181, 189 S.E. 496, 497 (1937); *Gardner v. Insurance Co.,* 163 N.C. 367, 374, 79 S.E. 806, 809 (1913). A representation in a life insurance application is material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract and accepting the risk. *Wells v. Insurance Co. and Nicholson v. Insurance Co.,* 211 N.C. 427, 429, 190 S.E. 744, 745 (1937); *Schas v. Insurance Co.,* 166 N.C. 55, 58, 81 S.E. 1014, 1015 (1914); 7 Strong's N.C. Index 3d *Insurance* § 18 (1977). Moreover, in an application for a life insurance policy, written questions and answers relating to health are deemed material as a matter of law. *Rhinehardt v. Insurance Co.,* 254 N.C. at 673, 119 S.E. 2d at 616; *Jones v. Insurance Co.,* 254 N.C. 407, 412, 119 S.E. 2d 215, 218-19 (1961); *Assurance Society v. Ashby,* 215 N.C. at 284, 1 S.E. 2d at 833; 7 Strong's N.C. Index 3d *Insurance* § 18.1 (1977).

[2] The misrepresentation in Mr. Ward's application concerning his health history is, under the foregoing authorities, material. So, arguably, is the misrepresentation concerning his arrests for violations involving alcohol, although we do not here decide this question.

[3] Even material misrepresentations in applications for insurance do not void the policy if the insurer knew the facts surrounding the misrepresentations at the time it accepted the application and issued its policy based thereon. It is well settled that

an insurance company cannot avoid liability on a policy issued by it by reason of any facts which were known to it at the

**WARD v. DURHAM LIFE INSURANCE CO.**

[325 N.C. 202 (1989)]

time the policy was delivered, and that any knowledge of an agent or representative, while acting in the scope of the powers entrusted to him, will, in the absence of fraud or collusion between the insured and the agent or representative, be imputed to the company, though the policy contains a stipulation to the contrary.

*Cox v. Assurance Society*, 209 N.C. 778, 782, 185 S.E. 12, 15 (1936); *accord Heilig v. Insurance Co.*, 222 N.C. 231, 233, 22 S.E. 2d 429, 431 (1942); *Smith v. Insurance Co.*, 208 N.C. 99, 102, 179 S.E. 457, 459 (1935); *Short v. Insurance Co.*, 194 N.C. 649, 650, 140 S.E. 302, 303 (1927); *Ins. Co. v. Grady*, 185 N.C. 348, 353, 117 S.E. 289, 291 (1923); 7 Strong's N.C. Index 3d *Insurance* § 19.1 (1977).

The question before us thus distills to this: Are the facts contained in Mrs. Ward's affidavit, if believed, sufficient to show that defendant's agent, Brenda, had knowledge of the misrepresentations contained in Mr. Ward's application under circumstances which would, under applicable legal principles, make this knowledge imputable to defendant. If they are and if offered at trial, then the defense of material misrepresentations in the application would be surmounted and defendant would not be entitled to summary judgment on the basis of this defense.

[4]   First we deal with defendant's contention that its agent, Brenda, was acting outside the scope of her authority if she accepted Mr. Ward's application with knowledge of the misrepresentations. The doctrine of apparent authority completely answers this contention adversely to defendant. In *Hornthal v. Insurance Co.*, 88 N.C. 71 (1883), this Court said:

A general agent . . . represents his principal . . . and may bind him by any act or agreement fairly within the apparent cope [sic] of his employment; and this, although there may have been limitations put on his authority unknown to those with whom, in such capacity, he may have dealings. Thus . . . notice to him is notice to his principal, and his knowledge is the knowledge of the company; he may waive a forfeiture and dispense with what would otherwise cause it.

*Id.* at 74-75 (citations omitted). Subsequently, in *Thompson v. Assurance Society*, 199 N.C. 59, 154 S.E. 21 (1930), this Court, addressing the same topic, likewise stated:

WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

The principal is not bound by or liable for the act of his agent which is beyond the actual, and not within the apparent scope of the agent's authority. . . . Where the act of the agent, although beyond the actual scope of his authority, is within its apparent scope, and the person dealing with the agent acts in good faith, and with reasonable prudence, the principal is bound.

*Id.* at 64, 154 S.E. 2d at 24. An agent's "*[a]pparent authority* is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses," *Investors Title Ins. Co. v. Herzig*, 320 N.C. 770, 773-74, 360 S.E. 2d 786, 788-89 (1987) (emphasis supplied). A principal's liability in any particular case "must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent." *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 30-31, 209 S.E. 2d 795, 799 (1974).

There can be no question here but that defendant had clothed its agent, Brenda, with apparent authority to act for it in receiving insurance applications and assisting applicants in properly completing them. *See, e.g., Thompson v. Assurance Society*, 199 N.C. at 64, 154 S.E. at 24. At least the evidentiary forecast here is that plaintiff will be able to show this at trial.

[5] We are now brought to the central and most difficult question raised by this appeal. There is no doubt, if Mrs. Ward's affidavit is believed, that defendant's agent, Brenda, knew of the falsity of some of the answers on Mr. Ward's application. The troublesome question is whether her knowledge under the forecast of evidence presented by Mrs. Ward's affidavit could at trial be shown to be imputable to defendant. The rule is that an insurer's authorized agent's knowledge of false material answers on an insurance application is imputed to the insurer unless both the agent and the applicant intend to perpetrate a fraud on the insurer by submitting the false answers. "In the absence of fraud or collusion between the insured and the agent, the knowledge of the agent when acting within the scope of the powers entrusted to him will be imputed to the company, though a direct stipulation to the contrary appears in the policy or the application for the same." *Ins. Co. v. Grady*, 185 N.C. at 353, 117 S.E. at 291.

## WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

[6]   Defendant argues "the fact that Mr. Ward could read and write and yet signed the application containing the misrepresentations makes the false information imputable to the applicant and not the insurer. . . ." There is language in several cases relied on by defendant and the dissenting opinion below which support this proposition. The cases are *Thomas-Yelverton Co. v. Insurance Co.*, 238 N.C. at 278, 77 S.E. 2d at 692; *Inman v. Woodmen of the World*, 211 N.C. at 179, 189 S.E. at 496; and *McCrimmon v. N.C. Mutual Life Ins. Co.*, 69 N.C. App. 683, 317 S.E. 2d 709, *disc. rev. denied*, 312 N.C. 84, 322 S.E. 2d 175 (1984). A careful reading of these cases reveals, however, that the results are all consistent with the general rule. These cases should not be read to hold that an applicant's mere signing of an application with false material answers is under all circumstances enough to avoid imputation of the agent's knowledge of the false answers to the insurer. Whether the knowledge is imputed depends ultimately on whether the applicant participated with the agent in committing a fraud on the insurer.

In *Thomas-Yelverton*, questions on the application asked whether the applicant had ever suffered from stomach disease and whether he had been attended by a physician during the last two years. *Thomas-Yelverton Co.*, 238 N.C. at 279, 77 S.E. 2d at 693. Applicant answered negatively. *Id.* Insurer's evidence at trial tended to show that applicant had been a patient of a physician within two years preceding the application and had suffered with a "peptic ulcer" and other serious gastro-intestinal problems for which he had been hospitalized. *Id.* at 280, 77 S.E. 2d at 693. Plaintiff beneficiary's evidence tended to show that defendant's agent, after having been fully informed of the applicant's medical problems, asked whether the applicant was working. *Id.* When told that he was, the agent replied, " 'If he's able to work, I can get insurance on him.' " When told that the applicant had been previously refused insurance by other companies, the agent asked in what name the prior applications were made. *Id.* When told the name was Roney Boykin, the agent asked if he had a middle name. *Id.* When told the middle name was Dan, the agent suggested the present application be made in the name of Roney D. Boykin. *Id.* This Court held that on the foregoing evidence the trial court properly allowed defendant insurer's motion for nonsuit, saying:

> [W]hen the insured signed the application he knew the agent had written the answers to the questions contained in it; and by

signing it in the form submitted, he represented that the answers were true. The plaintiff's evidence clearly establishes the truth of the affirmative defenses [material misrepresentations in the application] of the defendant.

*Id.* at 283, 77 S.E. 2d at 695.

Notwithstanding this statement, which is the concluding paragraph of the Court's opinion in *Thomas-Yelverton*, the holding in the case rests on the general rule that absent fraud or collusion between agent and applicant knowledge of the agent is imputed to the insurer. This rule is set out and discussed in the opinion. *Id.* at 281-82, 77 S.E. 2d at 694. Further, the Court was careful to note that at trial when plaintiff rested after putting on evidence in rebuttal, "defendant moved . . . to amend its pleadings to allege fraud. The motion was allowed and the pleadings so amended, and the defendant again moved for judgment as of nonsuit. The motion was allowed . . . ." *Id.* at 281, 77 S.E. 2d at 693. Defendant had unsuccessfully moved for nonsuit at the close of its evidence which tended to prove the false answers in the application. *Id.* at 280, 77 S.E. 2d at 693. Defendant had called its agent as a witness. *Id.* During cross-examination the agent equivocated as to the extent of his knowledge of the falsity of the answers. *Id.* After plaintiff's evidence in rebuttal, the amendment to the pleadings alleging fraud was made and the nonsuit motion granted. *Id.* at 281, 77 S.E. 2d at 693. It seems clear that both the nonsuit at trial and this Court's affirmance were based on the false application and fraud in which both the agent and applicant participated.

Defendant's reliance on *Inman v. Woodmen of the World*, 211 N.C. at 179, 189 S.E. at 496, and its progeny *McCrimmon v. N.C. Mutual Life Ins. Co.*, 69 N.C. App. at 683, 317 S.E. 2d at 709 is also misplaced. In *Inman* this Court held that knowledge of the soliciting agent of misrepresentations contained in a written application of life insurance at the time it was signed by the applicant could not be imputed to the insurer. *Inman*, 211 N.C. at 182, 189 S.E. at 497.

We agree with the Court of Appeals that the case before us is distinguishable from *Inman*. See *Ward .v. Durham Life Ins. Co.*, 90 N.C. App. at 291, 368 S.E. 2d at 394. In *Inman*, the evidence showed that the insurer's agent solicited the application for insurance. *Inman*, 211 N.C. at 180, 189 S.E. at 496. The applicant stated that he wanted insurance but doubted whether he could get

WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

it because of his medical history which included having been gassed as a soldier during the World War. *Id.* In addition, applicant stated he had received disability payments, had been treated for high blood pressure, and had been a patient at several veterans hospitals. *Id.* at 180, 189 S.E. at 496-97. All this information the applicant gave to the agent, who said, nevertheless, " 'I think I can get you by. You don't have to have a medical examination anyhow.' " *Id.* at 180, 189 S.E. at 496-97. The agent wrote the answers to questions appearing in the application and without reading the completed application to the insured, requested applicant to sign it. *Id.* at 181, 189 S.E. at 497. Applicant signed it in the agent's presence. *Id.* The application contained several false negative answers concerning applicant's medical history. *Id.* On the basis of this evidence the trial court allowed defendant insurer's motion for nonsuit. *Id.* This Court affirmed, holding the agent's knowledge of the application's false answers could not be imputed to the insurer. *Id.* at 182, 189 S.E. at 497.

Significant to the *Inman* decision is the agent's statement to the applicant after the applicant had doubted his ability to obtain insurance because of his medical history, that "I think I can get you by. You don't have to have a medical examination anyhow." This was followed by the agent's request that the applicant sign the application without having it read to him and, apparently, without reading it himself. *Id.* at 181, 189 S.E. at 497. It seems clear that both the nonsuit at trial and this Court's decision affirming it were grounded on fraud and collusion between agent and applicant so that the agent's knowledge was not imputable to the insurer. Indeed, this was the expressed basis of Justice Clarkson's concurring opinion. *Id.* at 182, 189 S.E. at 497-98 (Clarkson, J., concurring).

The concluding paragraph of the main opinion in *Inman* that the applicant's failure to read, or have read, the application "was not induced by any fraud on the part of the agent" should be read to mean that the agent did not commit a fraud on the applicant, not that there was an absence of fraud by both agent and applicant on the insurer. *Id.* at 182, 189 S.E. at 497. Again, *Inman* should not be read to mean that an applicant's signature on an application for insurance, known by the agent to contain false answers, is under all circumstances enough to preclude imputation of the agent's knowledge to the insurer.

In *McCrimmon*, plaintiff purchased life insurance on his son who suffered brain damage at birth. *McCrimmon*, 69 N.C. App. at

WARD v. DURHAM LIFE INSURANCE CO.

[325 N.C. 202 (1989)]

684, 317 S.E. 2d at 709. Although plaintiff informed the insurance agent of his son's condition, the agent failed to include this information in the application. *Id.* at 684, 317 S.E. 2d at 710. Plaintiff, without reading it, signed the completed application which falsely stated his child "did not have a defect or deformity and had not consulted a doctor within the last five years for any condition not set out in the application." *Id.* The Court of Appeals, believing it was bound by *Inman*, held plaintiff was barred from recovery under the policy because the false statements were not imputable to the insurer. *Id.* at 685, 317 S.E. 2d at 710.

[7] There is a fundamental factual difference between *Thomas-Yelverton, Inman,* and *McCrimmon* and the case before us. In all these other cases the evidence showed a culpable applicant. In these cases the applicants either knew or should have known that the application contained false answers to questions relating to their insurability. *Thomas-Yelverton,* 238 N.C. at 280, 77 S.E. 2d at 692-93; *Inman,* 211 N.C. at 180-81, 189 S.E. at 496-97; *McCrimmon,* 69 N.C. App. at 684, 317 S.E. 2d at 709-10. These cases taken together stand for a specific application of the general rule. They hold that where an insured understandingly executes an application he knows contains false material answers or executes it under circumstances that would put a reasonable person on notice that the application contains such answers, he ipso facto colludes with the agent in misleading the company.

[8] Here plaintiff's forecast of evidence presented by Mrs. Ward's affidavit is enough to demonstrate that she will at trial be able to show that Mr. Ward was an innocent applicant. She will be able to show that he signed the application only after defendant's agent assured him that since the events in question occurred more than two years earlier, they would not affect his insurability. Mr. Ward could, then, have reasonably believed the questions, as explained by defendant's agent, called for positive answers only if the events to which they related occurred within two years of the application. The questions were, therefore, truthfully answerable in the negative because none of the events to which they referred occurred within this two-year period. If, indeed, the insurer's agent sought to mislead her company, the forecast of evidence at the summary judgment hearing indicates that Mr. Ward was not a participant in this effort.

In conclusion and for the reasons stated, we hold that the factual showing at the summary judgment hearing presents a material issue of fact on whether the agent's knowledge of misrepresentations in the application for insurance should be imputed to defendant insurer. The Court of Appeals' decision reversing the trial court's summary judgment for defendant is, therefore,

Affirmed.