KIMBERLY B. GOODWIN v. INVESTORS LIFE INSURANCE COMPANY OF NORTH AMERICA AND CHARLES TOOMEY D/B/A CHARLES TOOMEY AGENCY

No. 474PA91

(Filed 4 September 1992)

1. **Rules of Civil Procedure § 50.3 (NCI3d)— directed verdict — prima facie case by nonmoving party—documentary evidence by moving party manifestly credible—no inherent bar to directed verdict**

There was no inherent bar to granting a motion for a directed verdict by defendant Investors Life Insurance where the credibility of Investor's documentary evidence was manifest. The Court of Appeals erred in its unpublished opinion by holding that the non-moving party's establishment of a prima facie case necessarily prevents the granting of a directed verdict in the moving party's favor.

**Am Jur 2d, Trial §§ 907 et seq.**

2. **Insurance § 250 (NCI4th)— life insurance—application—misrepresentations—material**

Defendant Investors Life Insurance should have been granted a directed verdict in an action arising from defendant's rescission of a life insurance policy following the death of the insured where plaintiff and her husband were asked by the agent when purchasing the policy whether plaintiff's husband had had his driver's license suspended or had had two or more moving violations or accidents within the past two years and neither plaintiff nor her husband informed the agent that her husband's license had been suspended, that he had had

GOODWIN v. INVESTORS LIFE INSURANCE CO. OF NORTH AMERICA

[332 N.C. 326 (1992)]

two moving violations, and that he had had two accidents within the past two years. It is clear that the representation regarding the driving record was false and that the company would have increased the premium if the question had been answered truthfully. Thus, Investors showed that the insured made representations which were material and false and, by so doing, fully overcame plaintiff's prima facie case.

### Am Jur 2d, Insurance §§ 1003, 1005-1007.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of an unpublished decision of the Court of Appeals, 104 N.C. App. 138, 408 S.E.2d 762 (1991), affirming the judgment entered by *Read, J.*, on 20 April 1990 in Superior Court, DURHAM County. Heard in the Supreme Court on 14 May 1992.

*Newsom, Graham, Hedrick, Bryson & Kennon, by David S. Kennett, for plaintiff-appellee.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by D. James Jones, Jr., for defendant-appellant Investors Life Insurance Company of North America.*

*Jordan, Price, Wall, Gray & Jones, by John R. Jordan, Jr., Robert R. Price, and R. Frank Gray, for Amici Curiae Jefferson-Pilot Life Insurance Company, Association of North Carolina Life Insurance Companies, and American Council of Life Insurance.*

LAKE, Justice.

The issue presented by this appeal is the propriety of the trial court's failure to grant a directed verdict for defendant Investors Life Insurance Company of North America (Investors). For the reasons set forth in this opinion, we have determined that this was error, and the decision of the Court of Appeals must be reversed.

The plaintiff and her husband, Walter B. Goodwin, met with defendant Charles Toomey on 14 November 1985 for the purpose of applying for and purchasing a life insurance policy on the life of Walter B. Goodwin. At the time, defendant Toomey was acting as agent for defendant Investors. He asked plaintiff and her husband certain questions appearing on the application form provided by Investors, filled out the form himself, and had the Goodwins sign the application. The following question appeared on the insurance application: "Within the past 2 years have you had your

driver's license suspended or had 2 or more moving violations or accidents?" Toomey checked the box representing that Walter Goodwin had not. Although plaintiff was aware of the fact that Goodwin's driver's license had been suspended on 19 August 1985 and that he had two moving violations and two accidents as well within the two years prior to applying for the insurance, neither she nor her husband informed Toomey. Plaintiff testified the subject never came up during the conversation. Toomey presented the form to the Goodwins and both signed it, although the application contained a clause above the signature lines which stated: "Having read the above statements and answers, I (we) represent that they are full, complete and true to the best of my (our) knowledge and belief . . . ." There is no evidence that either the agent or the insurance company, Investors, was aware of Goodwin's driving record.

Defendant Investors issued an insurance policy for the life of Walter Goodwin on 22 November 1985. Goodwin died on 11 July 1986 as a result of massive head trauma suffered in an accident during a prearranged race in which he was driving seventy miles per hour in a thirty-five mile per hour zone.

Upon notice of Goodwin's death, Investors initiated its standard investigation of the circumstances surrounding the death of the insured since the death occurred within two years of issuance of the policy. During the investigation, Investors conducted a motor vehicles record check and discovered the violations. On 22 September 1986 Investors notified plaintiff it was rescinding the policy due to the false information supplied on the application regarding her husband's driving record.

The plaintiff filed suit to enforce the policy, naming as defendants Toomey and Investors. Each defendant moved at the close of plaintiff's evidence for a directed verdict under Rule 50 of the North Carolina Rules of Civil Procedure. Defendant Toomey's motion was granted and plaintiff appealed to the Court of Appeals which affirmed the trial court's judgment as to Toomey. Plaintiff has not petitioned this Court for review of the decision of the Court of Appeals regarding Toomey.

The trial court denied defendant Investors' motions for directed verdict, for judgment notwithstanding the verdict and for a new trial after the jury returned a verdict against Investors. Investors

**GOODWIN v. INVESTORS LIFE INSURANCE CO. OF NORTH AMERICA**

[332 N.C. 326 (1992)]

appealed to the Court of Appeals which affirmed the judgment of the trial court.

[1] Defendant Investors contends the Court of Appeals committed error by affirming the trial court's denial of its motion for a directed verdict. It is fundamental law that a motion by a defendant for a directed verdict under N.C.G.S. § 1A-1, Rule 50(a) of the Rules of Civil Procedure tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. A defendant is not entitled to a directed verdict or a judgment notwithstanding the verdict unless the evidence, viewed in the light most favorable to the plaintiff, establishes its defense as a matter of law. *Kremer v. Food Lion, Inc.*, 102 N.C. App. 291, 401 S.E.2d 837 (1991); *Arnold v. Sharpe*, 296 N.C. 533, 251 S.E.2d 452 (1979); *Husketh v. Convenient Systems*, 295 N.C. 459, 245 S.E.2d 507 (1978). Where a defendant establishes an affirmative defense as a matter of law, there are no issues to submit to a jury and a plaintiff has no right to recover. Directing a verdict for the defendant in such instance is appropriate.

In determining whether a directed verdict should have been granted, the Court of Appeals misapprehended the standard for directed verdict. In affirming the trial court's judgment, the Court of Appeals stated: "In the light most favorable to Mrs. Goodwin, [these] facts establish more than the scintilla of evidence necessary to establish a prima facie case and thus, Investors was not entitled to a directed verdict or judgment notwithstanding the verdict." *Goodwin v. Insurance Co.*, 104 N.C. App. 138, 408 S.E.2d 762, slip op. at 11 (1991) (unpublished). By holding that the non-moving party's establishment of a prima facie case necessarily prevents the granting of a directed verdict in the moving party's favor, the Court of Appeals erred. This Court stated in *Bank v. Burnette*, 297 N.C. 524, 256 S.E.2d 388 (1979):

> It should be stressed that there are neither constitutional nor procedural impediments to directing a verdict for the party with the burden of proof where *the credibility of movant's evidence is manifest as a matter of law.* . . . Whether credibility is established as a matter of law depends on the evidence in each case.

297 N.C. at 537, 256 S.E.2d at 396.

GOODWIN v. INVESTORS LIFE INSURANCE CO. OF NORTH AMERICA

[332 N.C. 326 (1992)]

In the instant case, defendant Investors entered into the record the guidelines for adjusting premiums with respect to driving violations, and Investors' expert witness testified without objection as to how Mr. Goodwin's driving record would have increased the premium. The written guidelines in the company's underwriting manual supplied the controlling evidence for Investors' defense. Plaintiff offered no evidence to contradict Investors on this point. Accordingly, "[w]here the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents," *id.* at 537, 256 S.E.2d at 396, the credibility of movant's evidence is manifest as a matter of law. Thus, the credibility of defendant Investors' documentary evidence was manifest and there was no inherent bar to granting the motion for a directed verdict.

[2]   The question that remains is whether Investors' evidence that the misrepresentation was material entitled it to judgment as a matter of law. As stated by this Court in *Ward v. Durham Life Insurance Co.*, 325 N.C. 202, 381 S.E.2d 698 (1989), "[a] policy of life insurance may be avoided by showing that the insured made representations which were material and false." 325 N.C. at 210, 381 S.E.2d at 702.

Clearly false representations were made on the application. The information contained in the application clearly represented that plaintiff's husband, the decedent, did not have two moving violations and did not have his license suspended within the two years prior to his application. Defendant Investors' investigation after Goodwin's death revealed the Division of Motor Vehicles' report which showed these representations were untrue. Plaintiff asserts that she cannot be bound by the misrepresentations because she was unaware of the driving record question on the application and the agent's inaccurate response to it. However, this Court has held in a factually similar case:

> [T]he rule that the insured is not responsible for false answers in the application where they have been inserted by the agent through mistake, negligence, or fraud is not absolute, and applies only if the insured is *justifiably ignorant* of the untrue answers, *has no actual or implied knowledge* thereof, and has been guilty of no bad faith or fraud.

*Jones v. Insurance Co.*, 254 N.C. 407, 413, 119 S.E.2d 215, 219-20 (1961) (emphasis added). *See also, Ward v. Durham Life Insurance Co.*, 325 N.C. 202, 381 S.E.2d 698. Plaintiff and her husband signed

GOODWIN v. INVESTORS LIFE INSURANCE CO. OF NORTH AMERICA

[332 N.C. 326 (1992)]

the application thereby representing that they had read it and that the information contained therein was true. The law presumes that the plaintiff knew the contents of the application she signed; she has asserted nothing to justify her ignorance. As quoted in *Jones* from *Weddington v. Insurance Co.*, 141 N.C. 234, 54 S.E. 271 (1906): " 'It made no difference whether the plaintiff knew what was in the [agreement] or not. He signed it, and the law presumes he did know what was in it, and he will not be heard, in the absence of any proof of fraud or mistake, to say that he did not.' " *Jones*, 254 N.C. at 413, 119 S.E.2d at 219 (*quoting Weddington*, 141 N.C. at 243, 54 S.E. at 274). Thus, the representation made regarding decedent's driving record was false and, as there was no finding of fraud on the part of the agent or Investors, plaintiff will be held to the statement.

The determinative underlying issue in this case is whether the misrepresentation regarding the driving record was material. This Court has held that a representation in an application for an insurance policy is deemed material "if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, *or in fixing the rate of premium." Tolbert v. Insurance Co.*, 236 N.C. 416, 418-19, 72 S.E.2d 915, 917 (1952) (emphasis added). The uncontroverted testimony of Investors' expert witness at trial clearly indicated that if Investors had known of the violations at the time of the application it would have charged a higher premium. The annual premium charged by Investors based on the misrepresentation was $444.00. By the evidence submitted at trial, Investors showed that had the company known the truth the Goodwins' premium would have been $150.00 a year higher, an increase of approximately thirty-three percent. Investors established this by applying the written guidelines used by the company in underwriting life insurance policies to Mr. Goodwin's driving record at the time he applied.

At trial, Investors' expert testified without challenge that automobile accidents are the leading cause of death of young people ages sixteen through twenty-four. This fact reflects a rationale for asking the question and also tends to show a "natural influence" on setting life insurance premiums. Goodwin was twenty-four years old at the time of his application and at the time of his death.

GOODWIN v. INVESTORS LIFE INSURANCE CO. OF NORTH AMERICA

[332 N.C. 326 (1992)]

Plaintiff contends that an objective standard should be used in determining whether a misrepresentation is material. As authority for this position, plaintiff points to *Schas v. Insurance Co.*, 166 N.C. 55, 81 S.E. 1014 (1914), where, following a list of questions which the trial court recognized as proper on an insurance application, this Court said: "These and many other questions of like kind any prudent man engaged in the business of life insurance would be more than likely to ask . . . ." 166 N.C. at 60, 81 S.E. at 1016. The use of the word "prudent" does not make the standard an objective one. Earlier in the same opinion this Court said: "The determining factor, therefore, in such case is whether the answer would have influenced the company in deciding *for itself, and in its own interest*, the important question of accepting the risk, and what rate of premium should be charged." *Id.* at 59, 81 S.E. at 1015 (emphasis added). Undoubtedly, in some instances a question asked on an insurance application may be so immaterial under the circumstances that it would not allow an insurer to avoid a policy if answered falsely. In this case, however, there is a strong logical relationship between the question asked, assessing the risk, and the ultimate determination of an actuarially sound premium.

This Court recognizes that within various industries, including the insurance industry, some businesses are more risk averse than others and that an individual insurance company is well within its rights to establish what will trigger a higher premium. We therefore follow the subjective standard established in *Schas* and reject the notion that questions on an insurance application are material only if asked by all in the industry. Evidence was presented which indicated that not all insurance companies inquired into an applicant's driving record (though the evidence also showed that Investors was not alone in presenting this question on its application). As we have noted, the question of an applicant's driving record is related to determining an actuarially sound premium. Investors chose to ask the question and had guidelines for determining what rate would be charged according to how the question was answered and what information an investigation revealed. The insurance industry is highly competitive and that competition will determine what rates will be charged and what questions a company can afford to ask, or fail to ask, and remain in business.

Adopting the subjective standard of *Schas* and applying the *Tolbert* test for determining materiality, we conclude that defendant Investors should have been granted a directed verdict. It is

clear that the representation regarding Goodwin's driving record was false. It is also clear that if the question had been answered truthfully the company would have increased the premium charged for the coverage. Thus, Investors showed that the insured made representations which were material and false and, by so doing, Investors fully overcame plaintiff's prima facie case. Under the long-standing law in this state enunciated in *Ward*, defendant Investors was entitled to a directed verdict as a matter of law. The motion for directed verdict was improperly denied, and the case should not have been submitted to the jury.

Reversed.