JERRY WAYNE SURRATT AND LINDA S. SURRATT v. GRAIN DEALERS
MUTUAL INSURANCE COMPANY

No. 8422SC719

(Filed 16 April 1985)

**1. Insurance § 136— loss of dwelling by fire—coinsurance clause not effective**

In an action to recover under a homeowner's insurance policy for loss by fire, the court did not err in awarding plaintiffs the full amount of the policy for the loss of their dwelling. Defendant was not entitled to any reduction of its liability pursuant to policy provisions that plaintiffs could collect the full

Surratt v. Grain Dealers Mut. Ins. Co.

cost of repair or replacement of their dwelling only if they had insured the dwelling for at least 80% of its full replacement cost because the replacement cost provisions were essentially coinsurance provisions as defined in G.S. 58-30.1 and the words "coinsurance contract" were not printed or stamped on the policy. Moreover, the replacement cost provisions were not relevant to the determination of the amount which plaintiffs were entitled to recover because plaintiffs elected to recover the actual cash value of the dwelling. G.S. 58-158.

**2. Insurance § 136— loss of home by fire—finding sufficient for award of full policy amount**

In an action in which the court awarded plaintiffs the full policy amount under a homeowner's policy for loss of their dwelling by fire, the court's findings of fact were sufficient to support the conclusion that plaintiffs were entitled to recover $30,000, although the words "actual cash value" were not used, where the court found that immediately before the fire plaintiffs' dwelling was at least fifty years old; that it was in moderate condition; that in the opinion of the male plaintiff the dwelling was worth approximately $30,000 before the fire and approximately $2,000 after the fire; that an expert in the home construction business testified that he believed the fair market value of the dwelling prior to the fire was between $30,000 and $35,000; that the dwelling could not be replaced because of its style, its manner and method of construction, the materials used, current building methods, and the requirements of electrical and building codes; and that any attempt to repair the dwelling would be impractical.

APPEAL by defendant from *Wood, William Z., Sr., Judge.* Judgment entered 28 March 1984 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 6 March 1985.

Plaintiffs seek to recover proceeds allegedly due under a homeowner's insurance policy issued by defendant for loss by fire of their home and personal property. The face amount of the policy was $30,000 for loss to the dwelling, $15,000 for personal property loss, and $6,000 for living expenses. Plaintiffs sought to recover the full amount of the policy. Judgment was entered for plaintiffs in the amount of $30,000 for loss of their dwelling. Plaintiffs also were awarded amounts within the policy limits for their living expenses and loss of personal property, and interest at the legal rate until the judgment is paid in full. Defendant appeals.

*Wilson, Biesecker, Tripp and Sink, by Joe E. Biesecker, for plaintiff appellees.*

*George C. Collie and Charles M. Welling for defendant appellant.*

WHICHARD, Judge.

[1]  Defendant contends the court erred in awarding plaintiffs the full amount of the policy for loss of their dwelling. First, defendant argues the court erred in failing to conclude that plaintiffs were underinsured as defined by the replacement cost provisions of the policy and that therefore defendant was only liable for the cost to repair the dwelling minus the amount plaintiffs were underinsured. Under the policy issued by defendant, plaintiffs were insured to the extent of the actual cash value of the property covered therein at the time of loss in an amount not exceeding the limit of liability specified on the face of the policy. In addition, the policy contained the following replacement cost provisions:

1. Replacement Cost—Coverages A and B:

This condition shall be applicable only to a building structure covered hereunder excluding . . . .

> a. If at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss is 80% or more of the full replacement cost of such building structure, the coverage of this policy applicable to such building structure is extended to include the full cost of repair or replacement (without deduction for depreciation).

> b. If at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss is less than 80% of the full replacement cost of such building structure, this Company's liability for loss under this policy shall not exceed the larger of the following amounts (1) or (2):

> > (1) the actual cash value of that part of the building structure damaged or destroyed; or

> > (2) that proportion of the full cost of repair or replacement without deduction for depreciation of that part of the building structure damaged or destroyed, which the whole amount of insurance applicable to said building structure for the peril causing the loss bears to 80% of the full replacement cost of such building structure.

c. This Company's liability for loss under this policy shall not exceed the smallest of the following amounts (1), (2), or (3):

(1) the limit of liability of this policy applicable to the damaged or destroyed building structure;

(2) the replacement cost of the building structure or any part thereof identical with such building structure on the same premises and intended for the same occupancy and use; or

(3) the amount actually and necessarily expended in repairing or replacing said building structure or any part thereof intended for the same occupancy and use.

. . . .

f. The Named Insured may elect to disregard this condition in making claim hereunder, but such election shall not prejudice the Named Insured's right to make further claim within 180 days after loss for any additional liability brought about by this policy condition.

G.S. 58-158 provides that fire insurance policies issued on property within this State may contain replacement cost provisions. That statute provides, in relevant part:

[A]ny fire insurance company authorized to transact business in this State may, by appropriate riders or endorsements or otherwise, provide insurance indemnifying the insured for the difference between the actual value of the insured property at the time any loss or damage occurs, and the amount actually expended to repair, rebuild or replace on the premises described in the policy, or some other location within the State . . . with new materials of like size, kind and quality, such property as has been damaged or destroyed by fire or other perils insured against.

G.S. 58-30.1, however, specifically prohibits the inclusion of coinsurance clauses in insurance policies covering property in this State. That statute provides, in part:

No insurance company or agent licensed to do business in this State may issue any policy or contract of insurance

covering property in this State which shall contain any clause or provision requiring the insured to take or maintain a larger amount of insurance than that expressed in such policy, *nor in any way provide that the insured shall be liable as a coinsurer with the company issuing the policy for any part of the loss or damage to the property described in such policy*, and any such clause or provision shall be null and void, and of no effect: Provided, the coinsurance clause or provision may be written in or attached to a policy or policies issued when there is printed or stamped on the filing face of such policy or on the form containing such clause the words "coinsurance contract," and the Commissioner may, in his discretion, determine the location of the words "coinsurance contract" and the size of the type to be used. (Emphasis supplied.)

Coinsurance has been defined as a relative division of risk between the insurer and the insured, dependent upon the relative amount of the policy and the actual value of the property insured. Black's Law Dictionary 236 (rev. 5th ed. 1979); 44 Am. Jur. 2d *Insurance* Sec. 1510, at 505 (1982). "Coinsurance clauses in substance require the insured to maintain insurance on the property covered by the policy in a certain amount, and stipulate that upon his failure to do so, the insured shall be a coinsurer and bear his proportionate part of the loss on the deficit." 44 Am. Jur. 2d, *supra*, at 505-06. For example,

[i]nsurance policies that protect against hazards such as fire or water damage often specify that the owner of the property may not collect the full amount of insurance for a loss unless the insurance policy covers at least some specified percentage, usually about 80 percent, of the replacement cost of the property.

Black's Law Dictionary, *supra*. Coinsurance clauses are designed to induce the insured to carry full, or nearly full coverage, *id.*, and are generally held enforceable unless they are specifically prohibited by statute in the jurisdiction. 44 Am. Jur. 2d, *supra*, at 506.

Under the replacement cost provisions of the policy here, plaintiffs could only collect the full cost of repair or replacement of their dwelling if they had insured the dwelling for at least 80%

of its full replacement cost. If the insurance maintained on the dwelling was for less than 80% of its full replacement cost, defendant admits that under the policy plaintiffs become coinsurers or self-insurers for the difference between the amount of coverage and 80% of the full replacement cost. Thus, the policy's replacement cost provisions are essentially coinsurance provisions as defined in G.S. 58-30.1. The words "coinsurance contract" are not printed or stamped on the policy; therefore, the coinsurance provisions are not allowable under the proviso in G.S. 58-30.1. We conclude that to the extent the policy's replacement cost provisions provide for coinsurance they are null and void, and that defendant was not entitled to any reduction of its liability pursuant to those provisions in the event plaintiffs were underinsured. *See* G.S. 58-30.1.

Moreover, plaintiffs did not seek to recover under the policy's replacement cost provisions but instead elected to recover the actual cash value of the dwelling. Thus, the replacement cost provisions were not relevant to the determination of the amount which plaintiffs were entitled to recover. *See Edmund v. Insurance Co.*, 42 N.C. App. 237, 239, 256 S.E. 2d 268, 269 (1979).

[2] Second, defendant contends the court's findings of fact are not sufficient to support the conclusion that plaintiffs are entitled to recover the $30,000 policy limit for loss of their dwelling because there are no findings of fact as to the dwelling's actual cash value. The term "actual cash value" means "[t]he fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business, and not at forced sale," or "[w]hat property is worth in money, allowing for depreciation." Black's Law Dictionary, *supra*, at 33. The terms "actual cash value," "fair market value," and "market value" are generally synonymous. *Id.; see, e.g., Insurance Co. v. Lumber Co.*, 186 N.C. 269, 271, 119 S.E. 362, 364 (1923); *Grubbs v. Insurance Co.*, 108 N.C. 472, 480, 13 S.E. 236, 238 (1891); *Jefferson Ins. Co. of N.Y. v. Superior Court*, 90 Cal. Rptr. 608, 610, 475 P. 2d 880, 882 (1970). The proper test of actual cash value in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of the loss. 44 Am. Jur. 2d *Insurance* Sec. 1504, at 498; Annot., 61 A.L.R. 2d 711, 715 (1958). The tests generally used to determine actual cash value are the

market value of the property, the reproduction or replacement cost of the property, and the broad evidence rule. 44 Am. Jur. 2d, *supra,* Sec. 1504, at 498. Under the broad evidence rule, any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of the loss, including evidence of the fair market value and the replacement cost of the property, may be considered. 44 Am. Jur. 2d, *supra,* Sec. 1507, at 502-03; *see also, Group Von Graupen v. Employers Mutual Fire Ins. Co.,* 259 F. Supp. 934, 936 (1966).

The court here found: that immediately before the fire plaintiffs' dwelling was approximately fifty years of age or older; that it might have been constructed in 1920 or earlier; that it was in moderate condition; that in the opinion of the male plaintiff the dwelling was worth approximately $30,000 before the fire and approximately $2,000 after the fire; that an expert in the house construction business testified that in his opinion the fair market value of the dwelling prior to the fire was $35,000; and that a second expert in the house construction business testified that he believed the fair market value of the dwelling prior to the fire was between $30,000 and $35,000. The court found that the dwelling could not be replaced because of its style, its manner and method of construction, the materials used in constructing it, current building methods, and the requirements of electrical and building codes. In addition, the court made findings as to the cost of repairing the dwelling but found that the dwelling was a total loss and that any attempt to repair it would be impractical. Based on these findings, the court concluded that the dwelling was a total loss and that plaintiffs were entitled to recover the $30,000 limit of the policy.

Although the court did not use the words "actual cash value" in its findings, it did make findings of fact, supported by competent evidence, as to the actual cash value of the dwelling. The findings show that plaintiffs' dwelling had an actual cash value of $30,000 or more and they thus support the court's conclusion that plaintiffs are entitled to recover the full amount of the policy for loss of their dwelling. Accordingly, we affirm the judgment of the trial court.

Affirmed.

Judges WELLS and BECTON concur.