ROBERT E. KINLAW v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY

No. 8916SC729

(Filed 3 April 1990)

1. **Insurance § 113 (NCI3d) — fire insurance — misrepresentation in application not material and prejudicial**

     In an action to recover on a policy of homeowners insurance for losses sustained in a house fire, the trial court did not err in denying defendant's motion for summary judgment on the issue of whether an alleged misrepresentation in the application was material and prejudicial where plaintiff had three mortgages on his house; the application for insurance listed two; the application did not specifically state that one had to disclose all outstanding mortgages; plaintiff testified that he orally disclosed the other outstanding lien to defendant's agent; and there was no allegation or evidence of collusion between plaintiff and defendant's agent.

     **Am Jur 2d, Insurance §§ 1013, 1014, 1129-1133.**

2. **Witnesses § 1.4 (NCI3d)— absence of witness from list furnished defendant—testimony properly allowed**

The trial court did not err in allowing plaintiff to present testimony of an expert witness who had not previously been listed by plaintiff, since plaintiff included on his list of prospective witnesses "[a]ny witnesses listed by the Defendant"; the witness in question was listed as one of defendant's prospective witnesses; plaintiff called him as a rebuttal expert witness, but, prior to introduction of his testimony, the trial court conducted a voir dire hearing to determine the underlying basis of his testimony and allowed defense counsel to tape record that information so he could confer with his expert prior to cross-examining the witness; and the trial court also gave defense counsel additional time after the witness testified prior to his cross-examination of the witness to confer with defendant's expert.

**Am Jur 2d, Depositions and Discovery §§ 70, 71.**

3. **Insurance § 130 (NCI3d)— fire insurance—sufficiency of evidence of value of house**

In an action to recover on a policy of homeowners insurance for losses sustained in a house fire, evidence was sufficient to go to the jury on plaintiff's claim for damages to real property where plaintiff introduced a Sworn Statement in Proof of Loss which stated the actual cash value of the real property at the time of the loss was $80,000, and plaintiff also introduced as evidence of value the fireman's Report of Fire, the Robeson County Statement of Taxes Due, and the insurance policy itself.

**Am Jur 2d, Insurance § 1961.**

4. **Insurance § 131 (NCI3d)— fire insurance—loss within policy limit—replacement cost rider inapplicable—propriety of instruction—irrelevant**

Where the damages which were awarded in an action on a homeowners policy did not exceed the policy limit, the replacement cost rider was inapplicable, and even if the trial court's instruction on replacement cost was in error, there was no resulting harm to defendant.

**Am Jur 2d, Insurance § 1506.**

KINLAW v. N.C. FARM BUREAU MUTUAL INS. CO.

[98 N.C. App. 13 (1990)]

5. **Insurance § 132 (NCI3d) — prejudgment interest — time for commencement**

Any prejudgment interest awarded by the trial court in this action to recover on a homeowners insurance policy should have commenced sixty days after the date of the proof of loss.

**Am Jur 2d, Insurance § 1523.**

6. **Costs § 4.1 (NCI3d) — nontestifying expert witness — fee properly allowed as part of costs**

The trial court did not abuse its discretion by awarding costs which included a fee for a nontestifying expert witness. N.C.G.S. § 7A-314(a), (d).

**Am Jur 2d, Expert and Opinion Evidence § 25.**

APPEAL by defendant from judgment entered 24 October 1988 by *Judge Robert H. Hobgood* in ROBESON County Superior Court. Heard in the Court of Appeals 7 December 1989.

This is an action to recover on a policy of homeowners insurance for losses sustained in a house fire. Plaintiff brought this action after defendant denied his claim. In its answer defendant asserted that it denied plaintiff's claim because plaintiff made material misrepresentations in his application for homeowner's insurance and because there was evidence of intentional burning.

After discovery was completed, defendant moved for summary judgment on the issue of material misrepresentation by plaintiff in his application for homeowner's insurance. Defendant filed a supporting affidavit from Shirley P. Swett, the underwriting agent for plaintiff's policy. Plaintiff filed an affidavit disputing Swett's allegations. The trial court denied defendant's motion and the case was subsequently tried.

At the close of plaintiff's evidence, defendant moved for directed verdict on the issue of damages to real property which was denied. In rebuttal, plaintiff introduced testimony by Joe Hubbell, an expert witness. Mr. Hubbell had not previously been disclosed by plaintiff as an expert witness during trial and defendant objected to the introduction of his testimony. The trial court permitted the witness to testify. At the close of all of the evidence, both parties moved for directed verdict and their motions were denied. The jury answered "no" to the first two issues concerning whether

the plaintiff intentionally burned or procured the burning of his house and whether the plaintiff willfully misrepresented or falsely swore to any material fact or circumstance concerning the insurance. The jury verdict awarded damages in the amount of $85,000. Defendant then moved for judgment notwithstanding the verdict and, in the alternative, a new trial. Both motions were denied. Plaintiff moved for and was granted court costs in the amount of $17,008.07. Defendant appeals.

*Musselwhite, Musselwhite and McIntyre, by James W. Musselwhite, for plaintiff-appellee.*

*Anderson, Cox, Collier and Ennis, by J. Thomas Cox, Jr., for defendant-appellant.*

EAGLES, Judge.

[1] Defendant first contends that the trial court erred in denying its motion for summary judgment on the issue of whether the alleged misrepresentation in the application was material and prejudicial. Defendant argues that at the time of its motion for summary judgment, there existed no material issue of fact. Defendant's agent, Shirley Swett, stated in her affidavit that she was familiar with the procedure utilized in completing a homeowner's policy and that this procedure required her to obtain information on all outstanding mortgages on the property of the insured and that plaintiff only disclosed one mortgage on the property. Ms. Swett also swore that she would not have "submitted the Kinlaw application" if she had known there were three mortgages. Defendant further contends that plaintiff's failure to disclose all mortgages secured by the property at the time of his application for homeowner's insurance constituted a material misrepresentation.

"It is well established that the standard for reviewing a motion for summary judgment is whether the pleadings, depositions, answers to interrogatories, and admissions on file along with the affidavits submitted in support thereof, show the absence of a genuine issue of any material fact, and that a party is entitled to judgment as a matter of law." *Bullock v. Newman*, 93 N.C. App. 545, 548, 378 S.E.2d 562, 564 (1989).

Initially, we note that G.S. § 58-176 (renumbered as G.S. 58-44-15) sets out the "Standard Fire Insurance Policy for North Carolina" which includes a provision which reads as follows: "This entire

KINLAW v. N.C. FARM BUREAU MUTUAL INS. CO.

[98 N.C. App. 13 (1990)]

policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." The statute further provides that contracts for fire insurance should conform in substance with the provisions of the statute. Where the terms of a policy are in the form prescribed by statute, they are a clear and full statement of the law. *See Greene v. Aetna Insurance Co.*, 196 N.C. 335, 145 S.E. 616 (1928).

"It is a basic principle of insurance law that the insurer may avoid his obligation under the insurance contract by a showing that the insured made representations in his application that were material and false." *Pittman v. First Protection Life Insurance Co.*, 72 N.C. App. 428, 433, 325 S.E.2d 287, 291, *cert. denied*, 313 N.C. 509, 329 S.E.2d 393 (1985). Misrepresentations on an insurance application are material if "the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract and accepting the risk." *Bryant v. Nationwide Mutual Insurance Co.*, 67 N.C. App. 616, 621, 313 S.E.2d 803, 807 (1984), *rev. on other grounds*, 313 N.C. 362, 329 S.E.2d 333 (1985). "Although '[a]n insurer's duty under an insurance contract may be avoided by a showing that the insured made representations in his insurance application which were material and false,' [. . .] 'an insurance company cannot avoid liability on a life insurance policy on the basis of facts known to it at the time the policy went into effect.'" *Ward v. Durham Life Insurance Co.*, 90 N.C. App. 286, 290, 368 S.E.2d 391, 393-4, *rev. allowed*, 322 N.C. 838, 371 S.E.2d 284, *aff'd by* 325 N.C. 202, 381 S.E.2d 698 (1989). "'[K]nowledge of or notice to an agent of an insurer is imputed to the insurer itself, absent collusion between the agent and the insured.'" *Id.*, 368 S.E.2d at 394.

Here plaintiff submitted an application for homeowner's insurance on which were listed two mortgagees' names (defendant's Exhibit #17) when in fact there were three liens on the insured property. We note in passing that although Ms. Swett's affidavit said that plaintiff disclosed to her only one mortgage, the face of the application signed by plaintiff and Ms. Swett discloses the names of United Carolina Bank and Robeson Savings and Loan in the place for listing mortgagees. In his affidavit plaintiff stated that at the time he applied for insurance he told defendant's agent

"that there were three liens outstanding on the house which included Robeson Savings and Loan, United Carolina Bank and Midstate Oil."

Defendant argues that this court should affirm the principles set forth in *Roper v. National Fire Insurance Co.*, 161 N.C. 151, 76 S.E. 869 (1912). Defendant contends that *Roper* provides that concealment of an encumbrance on property will prevent recovery on the policy. While *Roper* did address the effect of concealing an encumbrance on insured property, the facts of *Roper* are clearly distinguishable from the instant case. The policy in *Roper* explicitly required the insured to disclose mortgages on the property. After careful review of the application here, we see no statement explicitly requiring the insured to disclose all mortgages on the property. There is merely a place on the application for the applicant to list the "mortgagee name." The issue of fact in dispute here is whether plaintiff orally disclosed to defendant's agent the other outstanding mortgage when they were completing the insurance application. Plaintiff's forecast of evidence and evidence at trial indicated plaintiff orally informed defendant's agent about all three liens but defendant's agent failed to list the additional mortgagee on the application.

Defendant further argues that by simply denying the allegations in its agent's affidavit plaintiff does not raise a genuine issue of fact. Defendant contends that by signing the insurance application plaintiff adopted the incomplete information on the application as his own statement. We disagree.

In *Ward v. Durham, supra,* our State Supreme Court stated that "an applicant's signature on an application for insurance, known by the agent to contain false answers is [not] under all circumstances enough to preclude imputation of the agent's knowledge to the insurer." 325 N.C. at 215, 381 S.E.2d at 705. The court then articulated the general rule that "where an insured understandingly executes an application he knows contains false material answers or executes it under circumstances that would put a reasonable person on notice that the application contains such answers, he ipso facto colludes with the agent in misleading the company." *Id.* at 216, 381 S.E.2d at 706.

Here, since the application does not specifically state that one must disclose all outstanding mortgages and the plaintiff testified that he orally disclosed the other outstanding lien to defendant's

agent and there is no allegation or evidence of collusion between plaintiff and defendant's agent, there is sufficient evidence to establish that a material issue of fact exists. Accordingly, the trial court's denial of defendant's motion for summary judgment was proper.

[2] Defendant next contends that the trial court erred in allowing plaintiff to present the testimony of Joe Hubbell since he had not previously been listed as an expert witness by the plaintiff and that allowing him to testify without sufficient notice to defendant was prejudicial. We disagree.

Initially, we note that the admissibility of testimony by a surprise witness is within the discretion of the trial judge and is not reviewable on appeal absent a showing of abuse. *In re Will of Maynard*, 64 N.C. App. 211, 307 S.E.2d 416 (1983), *disc. rev. denied*, 310 N.C. 477, 312 S.E.2d 885 (1984). A "[d]efendant should not [be] prejudiced by surprise testimony by his own witnesses." *Jennings Glass Co., Inc. v. Brummer*, 88 N.C. App. 44, 49, 362 S.E.2d 578, 582, *disc. rev. denied*, 321 N.C. 473, 364 S.E.2d 921 (1988).

Here we note that plaintiff called Joe Hubbell as a rebuttal expert witness. In the pretrial order plaintiff listed the names of his prospective witnesses and did not name Joe Hubbell on that list but included "[a]ny witnesses listed by the Defendant." Joe Hubbell was listed as one of defendant's prospective witnesses. Prior to the introduction of Hubbell's rebuttal testimony, the trial court conducted a *voir dire* hearing to determine the underlying basis of Hubbell's testimony. Defense counsel was also allowed to tape record that information so that he could confer with his expert prior to beginning his cross-examination of Hubbell. The trial court also gave defense counsel additional time after Hubbell testified prior to his cross-examination of Hubbell to confer with defendant's expert. On this record, we find no abuse of discretion.

[3] Defendant next assigns as error the trial court's denial of its motion for directed verdict on plaintiff's claim for damages to real property at the close of plaintiff's evidence and at the close of all evidence on the grounds that there was insufficient evidence of damages to support a claim. Defendant argues that the evidence presented to the trial court on the issue of damages to real property was insufficient as a matter of law. Defendant contends that no evidence of the actual cash value of the home was presented during the trial. We disagree.

"The proper test of actual cash value in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of the loss." *Surratt v. Grain Dealers Mutual Ins. Co.*, 74 N.C. App. 288, 293, 328 S.E.2d 16, 20 (1985). "The tests generally used to determine actual cash value are the market value of the property, the reproduction or replacement cost of the property, and the broad evidence rule. Under the broad evidence rule, any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of the loss, including evidence of the fair market value and the replacement cost of the property, may be considered." *Id.* at 293-4, 328 S.E.2d at 20.

Here, during his case in chief plaintiff introduced a Sworn Statement in Proof of Loss which stated the actual cash value of the real property at the time of the loss was $80,000. During defendant's case in chief, plaintiff introduced additional evidence of the value of the property and the amount of property damages through the fireman's Report of Fire, the Robeson County Statement of Taxes Due and the insurance policy itself. From this we conclude that, at the close of all of the evidence, there was sufficient evidence to go to the jury on plaintiff's claim for damages to real property.

[4] Defendant next assigns as error the trial court's instruction on the amount of damages because the instruction was not supported by the evidence and was contrary to the terms of the contract. We disagree.

Initially we note that the insurance policy in question includes a replacement value clause which for an additional premium becomes effective. It amends present coverage amounts when the insured has "elected to repair or replace the damaged building." Under the clause the insurer would increase the policy limits to "equal the current replacement cost of the dwelling if the amount of loss to the dwelling is more than the limit of liability indicated on the Declarations page." While the trial court instructed the jury to award $85,467.51 in damages pursuant to the stipulated replacement cost of plaintiff's dwelling, the jury awarded $80,000 in damages which is equal to the actual value of the lost property as indicated by the plaintiff's sworn proof of loss statement and other evidence introduced during trial. The amount of real property damages which was actually awarded did not equal the stipulated replacement

cost of plaintiff's dwelling. Since the damages which were awarded did not exceed the policy limit, the replacement costs rider was inapplicable here. Accordingly, even if the trial court's instruction was in error, there was no resulting harm to the defendant.

Defendant next contends that the trial court erred in denying its motion for judgment notwithstanding the verdict on the dual grounds that the chemist Joe Hubbell should not have been allowed to testify since he was not previously listed as an expert witness of plaintiff and that the evidence was insufficient to support a finding of damages to real property by the jury. These arguments have been discussed. Defendant also asserts the use of Joe Hubbell's testimony and insufficiency of evidence to justify the verdict as grounds for a new trial under G.S. 1A-1, Rule 59(a). We disagree.

A motion for judgment notwithstanding the verdict, or judgment N.O.V. is in effect a directed verdict granted after the jury verdict. A motion for judgment N.O.V. ". . . shall be granted if it appears that the motion for directed verdict could properly have been granted." A motion for judgment N.O.V., like a motion for a directed verdict, raises the question whether there was sufficient evidence to go to the jury, viewing all the evidence in the light most favorable to the nonmovant.

*Bryant v. Nationwide Mutual Fire Ins. Co.*, 67 N.C. App. 616, 618-19, 313 S.E.2d 803, 806 (1984), *disc. rev. allowed*, 311 N.C. 399, 319 S.E.2d 267, *aff'd in part, rev. in part*, 313 N.C. 362, 329 S.E.2d 333 (1985). G.S. § 1A-1, Rule 59(a) provides that a new trial may be granted to all or any of the parties and on all or part of the issues for any of the several causes or grounds none of which existed in this proceeding.

We have previously determined that the trial court correctly denied defendant's motion for directed verdict and accordingly this assignment of error must also fail.

[5] Defendant next argues that the trial court erred in awarding interest on the judgment from March 26, 1986 on the grounds that this award was contrary to law and contrary to the terms of the contract between the parties. Defendant contends that the trial court failed to follow *Dailey v. Integon General Ins. Corp.*, 75 N.C. App. 387, 331 S.E.2d 148, *disc. rev. denied*, 314 N.C. 664, 336 S.E.2d 399 (1985), which held that "prejudgment interest on a fire insurance policy recovery and [sic] begins sixty days

after the date of the proof of loss is filed with the insurer." We agree.

In ruling on the motion for prejudgment interest, the trial court stated that "[p]rejudgment interest shall be allowed from sixty days after the date of the proof of loss. That is, sixty days after February 25, 1986." The trial court then awarded interest commencing 26 March 1986 and continuing thereafter until satisfied. The 26 March 1986 date is clearly not sixty days after the date of the proof of loss. Sixty days after the date of the proof of loss would have been 26 April 1986. Accordingly, we remand the case for entry of an amended judgment awarding prejudgment interest consistent with this opinion.

[6] Finally, defendant contends that the trial court erred in awarding costs to the plaintiff on the grounds that the award is excessive, contrary to law and not supported by the evidence. Defendant argues that the trial court abused its discretion in awarding the expert fees of Norman Cope who never took the stand to testify during any portion of the trial. Defendant further asserts that the legislative intent of G.S. 7A-314(d) was to allow expert witness fees to be added to court costs only when that expert has testified in court. We disagree.

The express language of the statute provides that "[a] witness under subpoena, bound over, or recognized, . . . shall be entitled to receive five dollars ($5.00) per day, or fraction thereof, during his attendance, which, except as to witnesses before the Judicial Standards Commission, must be certified to the clerk of superior court; . . . (d) An expert witness, . . . shall receive such compensation and allowances as the court, or the Judicial Standards Commission, in its discretion, may authorize."

In *State v. Johnson*, 282 N.C. 1, 191 S.E.2d 641 (1972), the Supreme Court stated that subsections (a) and (d) of G.S. 7A-314 must be considered together.

Section (a) makes a witness fee for any witness, except those specifically exempted therein, dependent upon his having been subpoenaed to testify in the case, and it fixes his fee at $5.00 per day. As to expert witnesses, Section (d) modifies Section (a) by permitting the court, in its discretion, to increase their compensation and allowances. The modification relates only to the amount of an expert witness's fee; it does not

abrogate the requirement that all witnesses must be subpoenaed before they are entitled to compensation.

*Id.* at 27-8, 191 S.E.2d at 659.

Here by defendant's own admission, Norman Cope attended trial and was listed as a potential expert witness. Since the statute does not state that the expert must testify, the trial court did not abuse its discretion by awarding costs which included a fee for a nontestifying expert witness.

Accordingly, we remand this cause for entry of an amended judgment consistent with this opinion. In all respects other than the prejudgment interest issue, we affirm the trial court.

Affirmed in part, reversed in part and remanded.

Judges PARKER and ORR concur.