Accardi v. Hartford Underwriters Ins. Co., 2018 NCBC 109.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

THOMAS ACCARDI,

Plaintiff,

v.

HARTFORD UNDERWRITERS
INSURANCE COMPANY,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 2162

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendant Hartford Underwriters Insurance Company's ("Hartford") Motion to Dismiss. ("Motion", ECF No. 8.)

THE COURT, having considered the Motion, the briefs filed in support of and in opposition to the Motion, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES, in its discretion, that the Motion should be GRANTED for the reasons set forth below.

*Whitfield Bryson & Mason, LLP, by Daniel K. Bryson, J. Hunter Bryson, Gary E. Mason (pro hac vice), Jennifer S. Goldstein (pro hac vice); Kozonis & Klinger, by Gary M. Klinger (pro hac vice); and Waskowski Johnson Yohalem LLP, by Daniel R. Johnson (pro hac vice), for Plaintiff.*

*Ellis & Winters LLP, by Stephen D. Feldman and Kim E. Rinehart (pro hac vice) for Defendant.*

McGuire, Judge.

## I.     FACTS AND PROCEDURAL BACKGROUND

1.     The Court does not make findings of fact on motions to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (hereinafter the General Statutes will be referred to as "G.S." and the Rules of Civil Procedure will be referred to as "Rule(s)"), but only recites those facts included in the complaint that are relevant to the Court's determination of the Motion.  *See, e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).[1]

### A. *Summary of Dispute*

2.     In this case, Plaintiff Thomas Accardi[2] ("Accardi") challenges the method by which Hartford calculates the "actual cash value" ("ACV") for property damage claims under Hartford homeowners' insurance policies.  Hartford calculates ACV by determining the current cost of repair or replacement of the damaged property, depreciating the repair or replacement cost by an amount based on the age and condition of the property immediately prior to the damaging event, and subtracting from that amount the insured's deductible.

3.     Accardi claims "Hartford routinely understates [ACV] by depreciating the labor component of repair costs instead of only the physical item that is subject

---

[1] The facts recited herein are drawn exclusively from the Complaint (ECF No. 3) and the Plaintiff's insurance policy.  (ECF No. 8.2.)

[2] Accardi purports to bring his claim on behalf of an as-yet unidentified class of similarly situated individuals insured by Hartford who allegedly were underpaid on their claims because labor costs were depreciated from their benefit payments.  (ECF No. 3, at ¶¶ 2–3.) Accardi has not yet moved for class certification, and, as a result, the class-based allegations are not properly before the Court at this time. The Court addresses only Accardi's individual allegations for breach of contract.

to wear, tear, and obsolescence." (Compl., ECF No. 3, at ¶ 1.) Accardi argues that Hartford should not depreciate the labor costs because "labor does not depreciate over time." (*Id.* at ¶ 26.) Accardi characterizes this dispute as a "single legal question, common to all members of the class . . . [c]an an insurer obligated to reimburse [ACV] under materially identical policy language refuse to pay amounts it attributes to the depreciation of labor?" (*Id.* at ¶ 2.)

4. Hartford contends that ACV, as commonly used and as used in Hartford policies, has a plain meaning that includes depreciation of both the labor and material components of the current repair or replacement cost. Hartford argues that this definition is consistent with the purpose of indemnity insurance, which is designed to restore the insured to the pre-damage position. Hartford further argues that depreciating both material and labor is consistent with North Carolina law, and that there are no North Carolina cases that support Accardi's contention that labor costs should be excluded from depreciation.

*B. The Policy and Accardi's Claim*

5. Accardi owns a home in Fuquay Varina, North Carolina (the "Home"). (ECF No. 3, at ¶ 11.) At all times relevant to the Motion, the Home was insured under a homeowners insurance policy provided by Hartford ("The Policy"). (Ins. Pol'y, ECF No. 8.2.) The Home was damaged in a hail storm on or about September 1, 2017. (ECF No. 3, at ¶ 11.) "The roof, siding and garage of the Home were damaged in the storm and required repair and restoration." (*Id.*)

6.      The Policy is a hybrid ACV/replacement cost policy.[3]   Under The Policy, when an insured property suffers covered damage, Hartford is required to pay Accardi the ACV for the damaged property.  The ACV is calculated by finding the total current repair or replacement cost for the damaged property, reducing that total cost for depreciation, and then reducing that amount by Accardi's deductible.  (ECF No. 8.2, at p. 15.)  Hartford pays Accardi this amount as the ACV.  If Accardi chooses to have the repairs performed, and the repairs cost more than the amount initially paid as the ACV, then Hartford will reimburse Accardi for the amount he actually incurred for the repair or replacement up to the amount that was initially depreciated when arriving at the ACV.  (*Id*. at pp. 32–33, 46.)  If Accardi chooses not to make the repairs, Hartford does not reimburse him for depreciation.

7.      The Policy exempts wind and hail damage to the roof from this recovery scheme, and Accardi is not entitled to reimbursement for depreciation for these types of damages to his roof regardless of whether he undertakes expense to repair or replace the roof.  (*Id*. at p. 15.)

8.      After the Home was damaged and his claim was accepted by Hartford, Hartford sent an inspector out to Accardi's property to evaluate the claim.  Hartford's inspector estimated that the total repair or replacement cost for the damage to Accardi's house, including damage to his roof, was $10,287.28.  (ECF No.

---

[3] "Traditionally, insurers have provided two different types of property insurance for homeowners.  One is the ACV policy, and the other is a replacement cost policy. . . .  The most prominent form of homeowner's coverage is currently a hybrid between the two types of policies.  Coverage is first provided on an ACV basis until the repairs are completed.  Then, a supplemental payment is made so the total cost of the repair or replacement is paid, less the deductible."  Jessica Peterman, *Actual Cash Value and Depreciation of Labor on Homeowner's Policies*, 82 No. L. Rev. 551, 556 (2017).

3, at ¶ 17; Ex. A, at p. 5.) The estimated repair cost included both labor and materials. (ECF No. 3, at ¶ 17.) Hartford then applied depreciation of $3,043.92 to reduce the estimated cost to $7,243.36. (*Id.* at ¶ 23.) The amount calculated for depreciation included depreciation for labor, materials, and sales taxes on materials.[4] Finally, Hartford subtracted the $500 deductible applicable under The Policy, arriving at a total ACV payment of $6,743.36. (*Id.*) Accardi does not allege that he made the repairs to the Home or that he sought reimbursement of any depreciation.

9.      Accardi does not argue that Hartford should not have reduced the ACV for depreciation, only that Hartford cannot include in the depreciation an amount attributable to labor. Accardi alleges that depreciation of labor costs when calculating ACV is a breach of Defendant's obligations under The Policy because "labor does not depreciate in value over time" and, therefore cannot be a component of depreciation. (*Id.* at ¶¶ 26, 29–30.)

10.     The term ACV appears several times in The Policy, but ACV is not defined in the definitions section. (ECF No. 8.2, at pp. 19–20.) However, an addendum to The Policy entitled "Important Information About Your Roof Coverage" states:

> You will note your policy includes Actual Cash Value (ACV) Loss Settlement for covered windstorm or hail losses to your Roof. **This means if there is a covered windstorm or hail loss to your roof, [Hartford] will deduct depreciation from the cost to repair or replace the damaged roof**. In other words, [Hartford]

---

[4] Accardi does not challenge the amount depreciated for taxes in this lawsuit.

> will reimburse for the [ACV] of the damaged roof surfacing less any applicable policy deductible.

(*Id*. at p. 15 (emphasis added).) The Policy does not expressly define the term "depreciation."

11.     The Complaint alleges a single claim for breach of contract (ECF No. 3, at ¶¶ 48–54). Hartford filed the Motion on April 27, 2018. (ECF No. 8.) Hartford also filed an accompanying Brief in Support of its Motion. (ECF No. 9.) On May 25, 2018, Accardi filed his Brief in Opposition to Defendant's Motion to Dismiss. (ECF No. 19.) On June 18, 2018, Hartford filed a Reply. (ECF No. 24.) The Court held a hearing on the Motion on July 26, 2018. The Motion is now ripe for disposition.

## II.     LEGAL STANDARD

12.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). The Court construes the complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are

merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). In addition, the Court may consider documents which are the subject of plaintiff's complaint and to which the complaint specifically refers, including the contract that forms the subject matter of the action. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

13. Accardi's only claim is for breach of contract. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005). "An insurance policy is a contract between the parties, and the intention of the parties is the controlling guide in its interpretation." *Rouse v. Williams Realty Bldg. Co.*, 143 N.C. App. 67, 69, 544 S.E.2d 609, 612 (2001) (citation omitted).

> Under North Carolina law the construction and application of the policy provisions to the undisputed facts is a question of law for the court. Where the policy language is clear and unambiguous, the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written. Furthermore, in the absence of an ambiguity, the language used must be given its plain, ordinary, and accepted meaning. No ambiguity exists in a contract unless the court finds that the language of the parties is fairly and reasonably susceptible to either of the constructions for which the parties contend. If the court determines that the contract is not ambiguous, the court must enforce the contract as it was written and may not remake the contract under the guise of interpreting the ambiguous provisions.

*Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 684, 686–87, 443 S.E.2d 357, 359 (1994) (internal citations and quotations omitted). Nevertheless,

> it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it.
>
> . . .
>
> However, no meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions.

*Lane v. Scarborough*, 284 N.C. 407, 410–11, 200 S.E.2d 622, 624–25 (1973) (internal citations and quotation marks omitted); *see also Shelton v. Duke Univ. Health Sys.*, 179 N.C. App. 120, 124, 633 S.E.2d 113, 116 (2006) (quoting *Lane*).

## III. ANALYSIS

14. The issue for determination by the Court is an extremely narrow one. Accardi concedes that The Policy is a valid contract, and that The Policy provides for payment of the ACV to Accardi under the facts of this case. Accardi also concedes that ACV is properly arrived at by depreciating the total repair or replacement cost by some amount. Accardi's sole argument is that the cost of labor cannot be depreciated in determining ACV. Therefore, the question before the Court is whether the terms of The Policy are unambiguous in providing that depreciation for labor can be included in calculating the ACV.

15. In support of their respective positions, the Parties make lengthy academic arguments. Accardi relies primarily on scholarly writings, treatises, and other non-case law sources that state labor, unlike physical property, cannot physically deteriorate over time and, therefore, should not be depreciated. (ECF

No. 19, at pp. 5–7.) Hartford counters with its own law review article and treatises supporting its view that depreciation necessarily includes depreciation for labor costs. (ECF No. 9, at pp. 9, 12; ECF No. 24, at pp. 5, 8.) The Court does not find these scholarly and other writings to be dispositive of the issue.

16. Both Parties also cite to a raft of court decisions from other jurisdictions purportedly supporting their arguments. (ECF No. 9, at pp. 17–20; ECF No. 19, at pp. 8–12.) Many of the cases are fact intensive, involve policy language different from The Policy, arise in jurisdictions with instructive statutory or regulatory guidance on the meaning of ACV, or arise in jurisdictions with no prior case law interpreting the term ACV. (*Id.*) Nevertheless, on balance, the Court finds the reasoning of the courts in the decisions cited by Hartford to be more persuasive. *See, e.g.*, *In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017); *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746 (W.D. Pa. 2015).

17. Finally, both sides argue that only their interpretation truly serves the principles of indemnity underlying insurance coverage. Accardi argues that true indemnification requires Hartford to pay Accardi the estimated depreciated cost for "used materials" plus the total current cost of the labor needed to "install [the hypothetical used] materials at no cost to" Accardi. (ECF No. 19, at p. 17.) Hartford argues that in North Carolina, indemnity requires Hartford to pay the homeowner an ACV equal to the fair market value of the damaged property immediately prior to the loss, and that in most cases paying the homeowner for the depreciated cost of the materials but the full current labor costs of repair will result

in the homeowner receiving more than fair market value and constitutes a "windfall" to the insured. (ECF No. 9, at pp. 11–15.) Although both of these arguments have some appeal, the Court concludes, as discussed further below, that determining ACV by deducting for the depreciation of labor costs is more consistent with the principles of indemnity.

18. The Court has thoroughly considered the Parties' arguments and concludes, on the facts of this case and based on the underlying law of North Carolina, that the term ACV as used in The Policy is not "reasonably susceptible to more than one interpretation," and that the term ACV unambiguously includes depreciation for labor costs. *See, e.g., Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999); *Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 685, 687, 443 S.E.2d 357, 359 (1994) ("No ambiguity exists in a contract unless the court finds that the language of the parties is fairly and reasonably susceptible to either of the constructions for which the parties contend.").

19. First, although ACV is not contained in the definitions section, The Policy contains a definition of ACV. The roof coverage addendum states that ACV will be calculated by deducting depreciation "from the cost to repair or replace." (ECF No. 8.2, at p. 15.) In addition, The Policy provides for "replacement cost at the time of loss without deduction for depreciation" for limited types of personal property and contrasts replacement cost with ACV coverage applicable to the property under certain circumstances. (*Id.* at pp. 44–45.) When an insurance policy

> contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise. . . . In determining the meaning of a term, resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony.

*Rouse*, 143 N.C. App. at 70, 544 S.E.2d at 612 (internal citations and quotation marks omitted). The definition of ACV in the roof coverage addendum should be read in harmony with the use of that term elsewhere in The Policy. Finally, while contending that the lack of a definition of ACV in the Policy is somehow significant, Accardi concedes that deducting some amount from the cost to repair or replace for depreciation is an appropriate definition of ACV. Therefore, the Court concludes that the term ACV in The Policy is unambiguous and that calculation of ACV includes a deduction for depreciation.

20. The Court further finds that the term "depreciation" as used in determining ACV is not ambiguous. The Policy does not distinguish between depreciation for labor costs and materials costs and require that they be treated differently. *See Riggins v. Am. Family Mut. Ins. Co.*, 281 F. Supp. 3d 785, 788–89 (W.D. Missouri 2017) (holding that depreciation as used in homeowner's policy included depreciation of labor costs, in part, based on fact that "nothing in Plaintiff's policy language limits or excludes labor from the depreciation calculation"). Accardi's argument for a definition of depreciation that excludes labor costs would require the Court to read into The Policy a nonexistent provision excluding labor costs from depreciation. The Court cannot rewrite The Policy in this way. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773,

777 (1978) ("[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.").

21. The language in The Policy also must be interpreted in light of North Carolina appellate case law. The North Carolina Court of Appeals has held that "[t]he term 'actual cash value' means the fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business, and not at forced sale, or what property is worth in money, *allowing for depreciation.*" *Surrat v. Grain Dealers Mut. Ins. Co.*, 74 N.C. App. 288, 293, 328 S.E.2d 16, 20 (1985) (emphasis added). In *Surratt*, the Court also held that ACV is "synonymous" with fair market value. *Id.* While *Surrat* does not directly address the question of depreciating labor costs in determining ACV, there are no reported North Carolina cases that have held or even suggest that the term depreciation does not include all depreciation, including depreciation of labor costs.

22. Finally, the Court concludes that the only reasonable interpretation of depreciation as it is applied in determining ACV in The Policy must include depreciation for labor costs. Accardi concedes that depreciation should be interpreted to mean "the decrease in home or property *value* since the time it was built or purchased due to age or wear." (ECF No. 3, ¶ 22; emphasis added.) The value of a house, or a component part of a house such as a roof, garage or the siding, is more than simply the costs of the materials used; the value necessarily includes

the cost of the labor used to assemble and finish the materials. *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 770 (W.D. Pa. 2015) (holding that the value of covered property under the insurance policy necessarily includes the labor costs involved in assembling property). In this Court's view, it does not make logical sense to separate the cost of labor from that of physical materials when evaluating the depreciation of a house or its component parts. The labor costs must be considered in determining the current value. As appropriately summarized by Defendant:

> Accardi's policy does not insure against damage to material or labor costs; it insures against damage to "property." Property, like Accardi's roof or flashing or paint, is the product of both material inputs and labor inputs. Its value is the product of those inputs. But when the property ages, its physical condition declines, reducing its present value. This present value can be estimated by calculating the cost (both in material and labor) to replace the property today, but for older property, this estimate only works if the *entire* replacement costs are depreciated. These present-day costs are depreciated so that the total replacement cost today can be used as a measure of the property's current value.

(ECF No. 9, at p. 13.)

23.     Accardi proposes that ACV is properly calculated by depreciating from present cost of repair or replacement of the property for wear and tear to materials, but not depreciating for the cost of the labor to assemble or install those materials, and reimbursing the homeowner for the full current cost of the labor that would be needed to make the repairs. (ECF No. 19, at pp. 16–18.) This proposed definition of ACV gives the insured substantial benefits of a replacement cost policy, without

requiring the homeowner to make the actual repairs. The Policy allows Accardi to recover some of the labor costs that were depreciated in arriving at the ACV for certain types of covered losses if Accardi actually makes the repair and the cost of repair exceeds the ACV payment.

24. Accardi's insistence that ACV should include an up-front award of full labor costs of repair is illogical. Accardi did not purchase a replacement cost insurance policy; he purchased a hybrid ACV/replacement cost policy. A policy that paid full repair or replacement cost for all losses would undoubtedly cost Accardi substantially more in premium payments because of increased risk exposure placed on Hartford. To allow Accardi to purchase, pay lower premiums for, and make claims under a hybrid insurance policy, yet receive reimbursements like someone who chose a replacement cost policy, would allow Accardi to receive a windfall. *Gilbert v. N.C. Farm Bureau Mut. Ins. Cos.*, 155 N.C. App. 400, 404, 574 S.E.2d 115, 118 (2002) (interpreting similar insurance policy provision permitting the insurer to pay the homeowner the ACV, and not the full repair and replacement cost unless and until the insured made actual repairs, and holding that an interpretation of the contract allowing for payment of repair or replacement cost regardless of whether repairs were actually made would "allow plaintiffs to reap a windfall profit from a loss").

25. The Court concludes that the term ACV as used in The Policy is not reasonably susceptible to the interpretation proposed by Accardi, and is unambiguous. The Court further concludes that Hartford did not breach the terms

of The Policy when it depreciated both material and labor costs in the calculation of the ACV of Plaintiff's claim. Accardi's claim for breach of contract should be dismissed.

## IV. CONCLUSION

26. Defendant's Motion to Dismiss Plaintiff's claim for breach of contract is GRANTED, and Plaintiff's claim is DISMISSED, WITH PREJUDICE.

SO ORDERED, this the 22nd day of October, 2018.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases